MERCHANTS AND PLANTERS OIL COMPANY v. MAGGIE BURNS ET AL.

No. 1223.    Decided June 1, 1903.

**1.—Master's Duty—Rules for Protection of Servant.**

The law as to a master's duty to establish rules to protect servants from danger, in conducting his business, requires him: (1) only to use ordinary care to guard the laborer from such danger as might be foreseen; (2) to make such rules and provisions as would accomplish that result if carried out by his servants; (3) if rules apparently sufficient for protection under existing circumstances have been made and put in force, he is not bound to adopt others. (Pp. 577, 578.)

**2.—Same—Case Stated.**

A laborer in the service of an oil company, engaged in repairing a cable extending over railway tracks, was injured by a railway locomotive coming into the yard of the oil company, striking the cable, which had been lowered for the purpose of repair, and throwing down the platform attached to it, on which he was working. The rules adopted were, that the entrance of the tracks into the yard was closed by a gate, which was to be opened, on whistle signal from an engine about to enter, under direction of the company's weigh master, by an employe designated for that purpose. A locomotive admitted to move cars, the employes being warned not to work on the cable while it was there, had left, and the gate had been closed. It came back again, an unusual occurrence, without the usual precautions being observed, and struck, with its smoke stack, the lowered cable. Held, that there was no evidence justifying a submission of the question whether the company was negligent in failing to provide suitable rules for the protection of the servant. (Pp. 575-581.)

**3.—Master—Care Required—Probability of Danger.**

The master is required, not to provide against possible dangers and accidents, but against those which were probable under existing circumstances; nor is he liable for failure to adopt precautions which might have prevented an accident, where he has adopted other rules which would equally have prevented it if they had been observed. (P. 579.)

**4.—Rules for Protection—Evidence of Necessity—Charge.**

Where the facts do not suggest the necessity for other precautions than those taken, and there is no testimony by those versed in the business that others were necessary or commonly practiced, a charge which leaves the jury free to determine their necessity is without evidence to warrant its submission, the matter not being one of common knowledge. (Pp. 579, 580.)

**5.—Death—Damages Proportionate to Injury.**

In suit to recover for loss by death, a charge which directed the jury to award damages "proportionate to the pecuniary injury" occasioned to plaintiff might well have further explained those terms, but was not erroneous in the absence of a request for such explanation. (Pp. 580.)

**6.—Same—Requested Charge.**

An instruction that plaintiff could only recover, as pecuniary loss by death of another, such sum as would represent the present worth of the probable amounts deceased would have contributed, is erroneous in giving a mathematical rule on a subject on which the jury were entitled to exercise discretion. (Pp. 580, 581.)

Error to the Court of Civil Appeals for the First District, in an appeal from Harris County.

Maggie Burns sued the oil company for the death of her husband, and recovered a judgment which was affirmed on appeal. The company then obtained writ of error.

*Baker, Botts, Baker & Lovett,* for plaintiff in error. [*Hutcheson, Campbell & Hutcheson* were on brief in Court of Civil Appeals.]—The uncontradicted testimony shows that defendant abundantly met the full measure of its duty to exercise ordinary care to render the place at which Ben Burns was working reasonably safe, and the record contains no evidence justifying a finding in plaintiff's favor under the issues raised by the pleadings and submitted in the charge. This is not a case of conflicting evidence. The facts from which the inference of negligence must be drawn, if drawn at all, are undisputed. The question of negligence in this case, therefore, is one of law for the court, and we urge upon this court that it should hold, as a matter of law, that the undisputed evidence in this case discloses no negligence; that the court may do so, and should do so, is, we think, abundantly sustained by numerous authorities. Joske v. Irvine, 91 Texas, 581; Lee v. Railway Co., 89 Texas, 588; Grand Trunk Railway Co. v. Ives, 144 U. S., 417; Steiner v. Traction Co., 134 Pa. 201; Cope v. Hampton County, 19 S. E. Rep., 1018; Manning v. Railway Co., 16 Law. Rep. Ann., 271; Indianapolis, etc., Railway Co. v. Watson, 114 Ind., 20; Callahan v. Warne, 40 Mo., 131; Boland v. Railway Co., 36 Mo., 487; Gonzales v. Railway Co., 38 N. Y., 442; Simms v. Railway Co., 2 S. E. Rep., 486; Hathaway v. Railway Co., 29 Fed. Rep., 489; Nolan v. Railway Co., 53 Conn., 471; Gundelsweilder v. Chemical Co., 161 Pa., 23; Greenleaf v. Railway Co., 29 Iowa, 36; Todd v. Railway Co., 3 Allen, 21; Lucas v. Railway Co., 6 Gray, 72; Gavett v. Railway Co., 16 Gray, 507; Gahagan v. Railway Co., 1 Allen, 187.

Appellant was entitled to a peremptory charge, because the uncontradicted evidence shows that the death of Ben Burns was not caused by any wrongful act, negligence, unskillfulness or default of appellant as distinguished from its servants or agents. Rev. Stats., 1895, art. 3017; Lipscomb v. Houston & T. C. Railway Co., 64 S. W. Rep., 923, 95 Texas, 5; Hendrick v. Walton, 69 Texas, 192; Fleming v. Texas Loan Agency, 87 Texas, 241; Railway v. Cowser, 57 Texas, 306; Railway v. McDonald, 75 Texas, 46; Ritz v. Austin, 1 Texas Civ. App., 455.

If plaintiff was entitled to recover at all, the measure of her damages was the amount deceased would probably have contributed to her support, reduced to its present worth. Railway Co. v. Cowser, 57 Texas, 293; Railway Co. v. Henry, 75 Texas, 220; Railway Co. v. Johnston, 78 Texas, 542; McGown v. Railway Co., 85 Texas, 293; Railway Co. v. Loeffler, 57 S. W. Rep., 536; Railway Co. v. Morrison, 56 S. W. Rep., 931; Brockway v. Patterson, 72 Mich., 130; Goodhart v. Railway Co. (Pa.), 35 Atl. Rep., 193; Railway Co. v. Rouse (Ga.), 3 S. E. Rep., 307; Fulsome v. Concord, 46 Vt., 142.

The duty of the master is not absolutely to provide for the servant a reasonably safe place in which to work, but to exercise ordinary care to provide and maintain such a place. Behring Mfg. Co. v. Peterson, 67 S. W. Rep., 134, 28 Texas Civ. App., 194, and cases there cited.

*J. B. Brockman, O. T. Holt,* and *J. M. Cobb,* for defendant in error.— The testimony adduced upon the trial of this cause by the defendant, as well as by the plaintiff, clearly and conclusively showed that the plaintiff failed to keep a watchman to look out for the approach of engines, and that the defendant failed to close, and to keep closed, its yard gate, after the departure of the engine upon its first trip, and that the defendant failed to keep a watchman at the gate while it was open, but permitted the gate to remain open, and the engine to enter without usual signals, the preponderance of the evidence thereby showing that defendant failed to discharge its duty to exercise ordinary care to render the place at which Ben Burns was working at the time of his death reasonably safe, fully justified the jury in so finding in the plaintiff's favor, under the issues raised by the pleading and submitted in the charge of the court, and the jury having decided the controverted issue in favor of the plaintiff, this court can not disturb the finding, when it is not against the preponderance of the evidence to the degree that any manifest injustice has been done. 1 Greenl., Evidence, sec. 491; Constitution, art. 1, sec. 15; Edrington v. Kiger, 4 Texas, 89; Carter v. Carter, 5 Texas, 102; Russell v. Mason, 8 Texas, 227; Long v. Steiger, 8 Texas, 462; Scranton v. Tilley, 16 Texas, 192; Epperson v. Mills, 19 Texas, 65; Robinson v. Davenport, 40 Texas, 333; Harris County v. Campbell, 68 Texas, 26.

The Court of Civil Appeals did not err in overruling and refusing to sustain the eighth and ninth assignments of error, presented on page 40 of plaintiff in error's brief, for the reason that the charge given by the court was a correct and sufficient charge, especially so as the verdict or judgment is not complained of as excessive in damages. March v. Walker, 48 Texas, 375; Railway Co. v. Matula, 79 Texas, 584; Railway Co. v. Kindred, 57 Texas, 503.

BROWN, Associate Justice.—We copy the following findings of fact filed by the Court of Civil Appeals:

"The deceased (Ben Burns) was in the employment of the defendant oil company in the operation of its mill as a roustabout. On the morning of October 22, 1898, he and other employes of the defendant were at work upon a platform at the end of one of defendant's seed houses repairing a two-inch wire cable stretched between that and a platform to another seed house connecting the machinery in the two and extending over three railroad switch tracks running between the seed houses and used by the Texas & New Orleans Railroad Company and the International & Great Northern Railroad Company in delivering and receiving freight to and from the defendant. The cable had been lowered for the purpose of repairing it, and while the men were at work an engine of the Texas & New Orleans Railroad Company ran into the yard along one of the tracks and the smokestack struck the cable and threw down the platform to which it was attached and killed Burns. The engine had been in the yard once before that morning, and had

only left it about twenty minutes when it returned and caused the accident. The yard and the premises of defendant were inclosed by a high fence with a gate, where the railroad tracks entered, which was kept closed. The tracks were straight and there was nothing to obstruct the view between the gate and the cable, a distance of between 200 and 400 yards, but the platform upon which the deceased was at work was at the far end of the seed house from the gate and the persons operating the engine could not see those at work on the platform; nor could those on the platform see an engine coming along the track. At the time of the accident the machinery in one of the seed houses was running and making considerable noise. In using the tracks the railroad engines passed under the cable, which, when in proper position, was high enough to allow the engines to pass safely. But in order to repair the cable it was necessary to take it from the pulleys upon which it worked and slacken it. When thus slackened it swung low enough to be caught by the smokestack of a passing engine. In order for an engine to gain admittance to the defendant's yards it was the custom for the engineer to approach the gate and give four blasts of the engine whistle, when the gateman, an employe of the defendant, upon the order of the weighmaster, another employe, would open the gate and let it in. The defendant had no regular watchman to look out for the approach of engines and trains, but the weighmaster gave the warning to workmen in the yard when any was given. It did not appear who opened the gate for the engine when it returned and ran against the cable. The gateman let it in that morning, and after it went out the first time he closed the gate, but left it unlocked as it was the custom to do during the day. The engine usually came into the yard only once during the day and rarely returned in the morning.

"Defendant's superintendent instructed the foreman of the gang charged with the work, in the presence of deceased, while the engine was in the yard, not to go to work upon the cable and not to go upon the platform until the engine had left the yard, and the foreman waited until the engine left the yard and the gate had been closed before he commenced work or went upon the platform. It seems that upon its return into the yard the engine gave no signal. The foreman under whose direction the deceased was working had no power to employ or discharge the men under his supervision. He was simply in charge of the particular work. At the time of the accident some of the men in the gang were at work and others were standing around looking on, but none was down on the track keeping a lookout for engines. There were enough men to have spared one for this purpose.

"The deceased and the plaintiff were married April 27, 1898. They had no children. He was receiving $1.25 a day. At the time of his death he was 28 years old and in good health. Plaintiff was 30 years of age at the time of the trial and in good health. She testified that the plaintiff gave all his earnings to her. It was not shown that his mother received anything. Our conclusion is that the death of the plaintiff's

husband was caused by the negligence of the defendant without fault on his part and that she sustained damages to the amount of the verdict."

Maggie Burns filed her third amended petition in this case alleging that she was the wife of deceased Ben Burns; that they had no children, and that his mother, Fannie Burns, survived him. Plaintiff joined Fannie Burns as defendant with the Merchants and Planters Oil Company and by appropriate averments charged that Ben Burns was in the employ of the oil company on the 22d day of October, 1898, and that through the negligence of the said oil company, which was particularly set out in the petition, the said Ben Burns was killed on the said day, whereby the plaintiff was damaged in the sum of $20,000. The petition prayed, "that the said damages be apportioned among the parties entitled thereto as shall appear upon the trial hereof."

The oil company filed a general demurrer, general denial, and special answers, but in no way made any objection to the joining of Fannie Burns as a defendant. Fannie Burns appeared by attorney and filed a general demurrer and general denial, but offered no evidence on the trial. At the trial the jury found in favor of Maggie Burns against the oil company the sum of $2450, and found against Fannie Burns. Judgment was entered by the District Court in accordance with the verdict, which was affirmed by the Court of Civil Appeals.

The plaintiff in error contends that there is no evidence to sustain the finding of the jury that it was guilty of negligence which caused the death of Ben Burns. This presents to this court a question of law which must be decided under the rule that: "Negligence * * * is generally a question of fact and becomes a question of law to be decided by the court only when the act done is in violation of some law, or when the facts are undisputed and admit of but one inference regarding the care of the party doing the act in question; in other words, * * * the evidence must be of such character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it." Lee v. International & G. N. Railway Co., 89 Texas, 588. In examining this question we must look at the facts from the standpoint of the oil company as they appeared to it before the accident occurred, bearing in mind the following rules of law: (1) The oil company was required only to use ordinary care to guard the laborer from such danger as might be foreseen. Morgan v. Railway Co., 133 N. Y., 670; Texas & P. Railway Co. v. Bigham, 90 Texas, 223; Corcoran v. Railway Co., 126 N. Y., 673; Berrigan v. Railway Co., 131 N. Y., 582. In Morgan v. Railway Company the court said: "Even if it could be shown, after the accident, that it might have been prevented by adopting and enforcing some suitable rule, that would constitute no proper test of liability. The failure to adopt a rule is not proof of negligence, unless it appears from the nature of the business in which the servant is engaged that the master, in the exercise of reasonable care, should have foreseen and anticipated

the necessity of such precaution." And in Berrigan v. Railway Company, cited above, the court said: "The defendant was only bound to use ordinary care in formulating rules, and it is not reasonable to proceed upon the assumption that every injury to an employe can be guarded against and prevented by making such rules." (2) The defendant oil company was required by law to make such rules or provisions to protect Ben Burns while engaged in the hazardous business as would accomplish that result if carried out and executed by its servants. Railway Co. v. Hall, 78 Texas, 657. (3) If the oil company in prosecuting its business had already made and put in force a rule, or taken precautions which were apparently sufficient to protect Ben Burns in the position that he then was and under the then existing circumstances, it was not required to make other rules or regulations. Kudik v. Railway. Co., 78 Hun, 494; Rutledge v. Mo. Pac. Railway Co., 123 Mo., 123. In the case of Kudik v. Railway Company, before cited, the court said: "In regard to the first of these charges (a failure to make proper rules) it is to be said that no particular additional rule on the subject mentioned was shown to be either useful or practicable, while the evidence was undisputed that the rule which was in force was perfectly understood by all concerned, viz., which requires the brakes to be securely set upon the cars standing on the trestle, was entirely adequate to accomplish the purpose so far as a rule could do so, and that if it had been observed in this case the accident could not have occurred. * * * The charge of negligence for not making a rule is avoided by the proof of a rule and practice actually in force which rendered any other rule apparently unnecessary."

Looking at the facts of this case from the viewpoint of the oil company before the accident, we find this condition of things. Burns was at work on a platform safe of itself, but with the cable lowered over the railroad track he was liable to injury if the railroad locomotive should attempt to pass through the yard while Burns was in that position. To guard against such danger the oil company had its yards fenced and a gate placed at the point where the railroad track entered. No locomotive entered the yards except that each morning one from the Texas & New Orleans and International & Great Northern each came to place cars which the company desired to load, or to take out cars already loaded for transportation. As a rule the locomotive did not return during the forenoon. The locomotive had been in the yard that morning, had departed, and the gate was closed. While there, the foreman had, in the presence of Burns, instructed the hands not to work upon the platform while an engine was in the yard. The oil company made the following rules to govern the operation of the locomotives into and out of the yard: the weighmaster alone had authority to order the gate opened for admitting a locomotive, and there was an employe designated whose duty it was to open the gate by direction of the weighmaster and to close it when the locomotive had passed out of. the yard, which was done when the engine passed out that morning. When approaching the gate for the pur-

pose of entering the yard the engineer upon the locomotive was required to give four blasts of the whistle, which could be heard all over the yard by the employes working therein, and had no right to enter until the gate was opened by the employe of the oil company.

Recurring to the legal proposition that the oil company was required only to provide against accidents which might be foreseen, the question arises upon this state of facts: would ordinary prudence on the part of the oil company have suggested to it that injury to Burns by reason of his hazardous position might occur under this arrangement and these provisions for his protection? The company was not required to provide against *possible* danger and accidents, but against those which were *probable* under the existing circumstances. We are of the opinion, that, under the facts of this case as stated above, the injury to Burns would not have been foreseen by an ordinarily prudent person in an honest purpose to protect the man from danger on account of his hazardous position, and the operation of the engine in the yard.

As before stated, the oil company was required to provide such rules and regulations for the conduct of its business under these circumstances as, if properly carried out by its employes and by the engineers upon the locomotives, would have prevented injury by reason of the operation of the locomotives within the yard when the men were engaged in work. Railway Co. v. Hall, 78 Texas, 657. If the regulations which the company made had been executed it would not have been probable, and barely possible, that injury might result to Burns under the circumstances; for, if the engineer had given the signal of four loud blasts upon his whistle, the weighmaster would have been notified and he would have called the servant whose duty it was to open the gate, who was at work in the mill yard, and thereby Burns and those laboring with him would probably have been notified of the approach of the engine; besides the signal blasts would probably have been heard by Burns and every employe engaged with him upon the platform, and being already warned not to work at that place when the engine was in the yard, it would have admonished Burns and others to protect themselves against danger by reason of the untimely re-entrance of the engine into the yard. The facts do not suggest to the mind the necessity for other precautions than those already taken and the safeguards which had already been provided for the protection of the employes of the mill.

The oil company, having formulated and published rules and made provisions which were amply sufficient for the protection of the employes if they had been properly executed, can not be held liable for the result of a failure on the part of the employes to perform their duties, nor for the failure of the engineer who operated the engine to perform the duty enjoined upon him.

There was no testimony given by anyone versed in the business that other precautions than those already taken by the company were necessary, or commonly practiced by persons engaged in like business. The effect of the charge of the court was to submit to the jury, without evi-

dence, to determine the question whether or not it was necessary and the duty of the oil company to furnish a special watchman on this occasion. This is not a matter of common knowledge which the jury might decide without evidence and upon their own observation of the ordinary affairs of life. Morgan v. Railway Co., 133 N. Y., 669; Larow v. Railway Co., 61 Hun, 11. In the last case the court said: "The effect of this instruction was to submit to the jury the question whether a certain rule should have been made and promulgated by the defendant without any proof whatever as to its practicability, or that any similar rule had ever been adopted or followed by any other railroad company in the management of the engines and cars in its yards. In other words, the plaintiff was permitted to suggest a rule for the management of the business of railroads, which, so far as appears from the evidence, was not shown to be either in use or practicable, and the court then submitted the question of its propriety to the jury, that it might, by guess or speculation, determine whether such a rule was proper, and if so, might find that the defendant was negligent in not having adopted and promulgated it."

If the special watchman had been stationed at the place there would have been no assurance that he would have been more faithful than the others. It is apparent that the accident did not result from want of proper precautions, but from a failure of the servants to observe and carry out the rules that existed.

We think the evidence does not raise a presumption that the rules already provided by the oil company were inadequate for the purpose of protecting its employes, and there being no evidence of that fact the jury had no basis upon which to found a verdict in favor of the plaintiff.

On the measure of damages the trial court gave this charge to the jury: "That, in an action for negligence causing death, the measure of damages is such sum as, from all of the evidence in the case, the jury may consider proportionate to the pecuniary injury occasioned to the person or persons, if any, entitled to recover in the suit by the death of the deceased person, allowing nothing for the distress of mind of the survivor or loss to such survivor of the deceased person's society, as the law in such cases gives compensation only for pecuniary loss."

Plaintiff in error complains of this charge, and we are of the opinion that the court might well have gone further in explaining to the jury what is meant by the terms "proportionate to the pecuniary injury." But the charge substantially follows the statute and is correct as far as it goes. If dissatisfied the defendant should have requested a correct special charge upon that point. The plaintiff in error attempted to perform this duty by requesting the court to give the following charge: "You are charged, that, should you find in favor of the plaintiff for any amount, the plaintiff is not entitled to recover a sum equal to what Ben Burns would probably have contributed to her support during the balance of his life, multiplied by his life expectancy, as fixed by the life expectancy table produced in this case; but, in determining the damages, if any, sustained by the plaintiff, on account of the death of Ben Burns,

you will take into consideration all the facts and circumstances which would tend to affect the probable amount which he would have contributed to the plaintiff's support during each year, had he lived, and if the plaintiff is entitled to recover at all, she can only recover such sum as would represent the present worth of the probable amount which Burns would have contributed to her support had he lived. In this connection you are charged that the plaintiff is not entitled to recover for any pain, or suffering, or loss of companionship, which she may have suffered in this case on account of the death of the said Ben Burns. If entitled to recover at all, she is only entitled to recover such pecuniary damages as she may have sustained on account of the said Ben Burns' death." The requested charge does not state the law correctly and was properly refused. The objectionable phase of the charge consists in the use of this language: "She can only recover such sum as would represent the *present worth* of the probable amount which Burns would have contributed to her support had he lived." The effect of this charge would be to prescribe a mathematical rule by which to ascertain what a given sum would be worth at the time of the trial. While the jury may not arbitrarily assess such sum as to them may seem "proportionate to the injury," without reference to the facts and circumstances of the case, yet the law does confide to them considerable discretion, and the court should not undertake to lay down a fixed rule by which they must be governed in ascertaining that sum which, now paid, would be compensation for the pecuniary injury sustained.

We are of the opinion that it was the intention of the lawmakers by the use of the language, "The jury may give such damages as they may think proportionate to the injury resulting from such death," that the sum assessed by the jury should, as a present payment, be a fair compensation to the injured party for the pecuniary losses sustained by the death. San Antonio Traction Co. v. White, 2 Texas Ct. Rep., 207; Galveston, H. & S. A. Railway Co. v. Worthy, 87 Texas, 459; City of Galveston v. Barbour, 62 Texas, 172. The trial court should inform the jury that the object of the law is to give compensation for the pecuniary loss, but the jury must be permitted to decide, under all the circumstances of each case, whether a sum less than the aggregate amount which the deceased would probably have contributed to the injured party if he had lived would compensate for the pecuniary injury sustained. The facts of each case will better determine that question than any general rule that could be laid down by the court.

We find it unnecessary to discuss the other assignments of error, as we conclude that the verdict of the jury is without evidence to support it and that the facts did not tend to show that the defendant was guilty of negligence in failing to station a special watchman at the place. The judgments of the District Court and of the Court of Civil Appeals are reversed and this cause is remanded to the District Court for further trial.

*Reversed and remanded.*