## WALGREEN TEXAS CO. v. SHIVERS et ux.

No. 3446.

Court of Civil Appeals of Texas. Beaumont.
Aug. 8, 1939.

Rehearing Denied Sept. 19, 1939.

Orgain, Carroll &' Bell and John G. Tucker, all of Beaumont, for appellant.

C. A. Lord, of Beaumont, and Shivers & Keith, of Pt. Arthur, for appellees.

O'QUINN, Justice.

Appellees, W. G. Shivers and his wife, Mrs. W. G. Shivers, brought this suit against appellant, Walgreen Texas Company, to recover damages suffered by Mrs. W. G. Shivers, occasioned by her falling in endeavoring to vacate a stool at the service counter of appellant's drug store in the city of Beaumont.

For cause of action, among other things, appellees alleged:

"Plaintiffs allege that among other appliances in the said place of business, and owned and used in connection therewith by defendant, was a counter about 30 feet long where cold drinks, coffee, lunches and other refreshments were served by defendant to the public, which counter was built upon the floor of said building, and was constructed of tile and metals and similar materials, and extended upward from the floor at right angles and to a height suitable for use for the purposes aforesaid; that the main floor of the said room was of concrete and stone composition, or of other very hard material; that as forming a part of the said counter and of the ap-

pliances used in connection therewith, there was a narrow platform about 24 inches wide extending along in front and at the side of the said counter; that the said platform was about 10 inches high, and was constructed of tile and the surface thereof was very smooth, as was also the surface of the main floor; that as forming a part of the said platform there were stools securely fastened to and built into the said platform, which were for use of persons and patrons being served at the said counter; that said stools were placed about 12 inches apart—that is to say, the tops of the same were about such distance apart; that the said platform extended upward from the floor proper as above stated and at right angles thereto a distance of about 10 inches, and the front portion of the said counter extended upward from the said platform at right angles, and the said platform on which the said stools were located had a level and very smooth surface from the outer edge thereof back to the front portion of the said counter as aforesaid; that the said platform, counter and appliances had been so placed upon the floor of said leased premises by defendant, or by some former tenant from whom defendant had acquired the same, so that the same were not owned by or under the control of the owner of the building but were owned by and under the control of the defendant.

"Plaintiffs allege that the said platform and stools are so constructed and arranged in the respects aforesaid as that if any adult person seated at the said counter on one of the said stools turns in a natural and usual manner in arising from and leaving one of said stools, the said platform is too narrow to accommodate the feet, and so that the said elevated platform and its edge is a stumbling block and trap to the feet of such person rising and turning away from the said counter in the act of leaving the same, and so that the said platform is unsafe and causes an unsafe condition in said floor, and is calculated to trip such person so using the same over its edge or rim, which is at right angles formed by the top surface and side of the said platform as aforesaid.

"Plaintiffs allege that on the 6th day of November, 1936, the plaintiff Mrs. W. G. Shivers became a customer and patron of the place of business aforesaid and for the purpose of being served at the said counter she occupied one of the said stools, and after being served as desired she proceeded to leave the said counter; that in doing so she turned on the said stool, arising from the said stool and stepping away from the said counter in a natural manner and way; that on account of the location and position of the said platform as aforesaid, and on account of the said platform being above the other portion of the floor in the said store, and on account of the narrowness of the same, and on account of the said stools being situated upon the said raised platform rather than on the main floor or floor proper in the said store, she was caused to fall and be thrown down and she did fall heavily upon the floor, thereby sustaining the injuries hereinafter set forth.

"That on account of the conditions aforesaid the foot of the plaintiff Mrs. W. G. Shivers encountered the edge of the said raised platform in such manner and way as to cause her foot to protrude and extend over the said edge and to cause her to lose her bodily balance.

"Plaintiffs allege that the fall of the plaintiff Mrs. W. G. Shivers as aforesaid, and her injuries and damages resulting, were the direct and proximate result of the conditions and defects in the construction and maintenance of the said narrow platform above the main floor as aforesaid, and the having and maintaining of the said stools upon the said narrow platform in connection with the said counter as aforesaid, and the plaintiffs allege that the said appliances and appurtenances were in their nature and construction dangerous for use in the respects aforesaid, and especially for use by persons of the age of the plaintiff Mrs. W. G. Shivers; and the plaintiffs allege that the nature, type and condition of the said appliances and appurtenances so used at and in connection with the said counter by defendant were unusual and different from those ordinarily used in such connections in such places in such premises, and that the said stools so maintained and used by the defendant in connection with the said counter as aforesaid were in the manner used unusual and different from those ordinarily used in such connection and in such places, in that such stools in general are placed upon the main floor or floor proper and are not placed upon a raised platform at such counters.

"Plaintiffs allege that there was negligence on the part of the defendant in maintaining and using the appliances

aforesaid in the conditions and under the circumstances aforesaid, in the following respects:

"It was negligence for the defendant to have, maintain and use the said raised platform in connection with the said counter as aforesaid; and in this connection the plaintiffs allege that said platform so raised above the main floor was a stumbling block and trap to persons leaving the said stools and turning away from the said counter, and that under the conditions and circumstances aforesaid the same was unsafe for the use of such persons as the plaintiff Mrs. W. G. Shivers.

"That the platform was too narrow and was not of sufficient width to reasonably accommodate the foot of an adult person arising from one of the said stools and stepping away from the said counter in a natural manner and way, and there was negligence in having and maintaining such a narrow platform in front of the said counter.

"That it was negligence for the defendant to have, maintain and use the said stools in connection with the said counter upon the said elevated platform under the circumstances and conditions aforesaid, and the said stools should have been placed and located upon the main floor or floor proper, and it was negligence on the part of the defendant to not so have and locate the same.

"Plaintiffs allege that the plaintiff Mrs. W. G. Shivers was not acquainted with the said appliances and conditions and was not aware of the dangers aforesaid; that all of said conditions and the dangers therein were well known to the defendant and should have been known to it by the exercise of ordinary care, and the acts of negligence aforesaid directly and proximately caused the plaintiff Mrs. W. G. Shivers to fall as aforesaid, and the same were the direct and proximate cause of the injuries and damages herein alleged."

Appellant answered by general demurrer, various special exceptions, general denial, and specially that the platform and stools had been in use for many years and had proven satisfactory, and that there was nothing in such prior use putting the appellant on notice of any defects therein and that appellant could not have reasonably foreseen or anticipated any such injuries as were alleged by appellees; that the platform and stools complained of were open and obvious to appellee Mrs. W. G.

Shivers; that she assumed the risk in using them; that she had used the said platform and stools at a time prior to receiving her injuries and had full knowledge as to same; and that she was guilty of contributory negligence in failing to properly observe such platform and stools and in the manner of such use.

The trial was to a jury upon special issues which were answered in favor of appellees, and judgment rendered in their favor in the sum of $9,365.

Appellant's first two assignments assert that the court erred in refusing appellant's request for an instructed verdict. The facts are practically without dispute. Appellant was operating a drugstore and place for serving cold drinks, coffee, lunches and other refreshments. The place was located in the Goodhue building on Pearl and Crockett streets in Beaumont, Texas. The fixtures consisted of a lunch and drink counter 24 feet long extending along the wall of the building next to Crockett street. There was a platform 24 inches wide along the entire length of the counter. This platform was 9¾ inches high arising from the floor. The platform was constructed of dark colored squares of tile between which was a wide band of white colored cement of about one-half inch in width. The floor of the building (drugstore room) was lighter than the tiling of the platform. On this 24 inch platform along the 24 foot length of the counter, there were 11 stools firmly attached to the floor of the platform which were immovable except the tops could be turned around. The stools stood 32 inches high above the floor of the platform. The tops of the stools (seats) were about 11½ inches apart—that is from the edge of one to the edge of the one next to it. Patrons of the place would sit on these stools while being served. The drug store had been in operation with this equipment since in 1928. On November 6, 1936, Mrs. W. G. Shivers, at that time 66 years of age, who lived at Saratoga in Hardin County, Texas, came to Beaumont with her daughter, Mrs. Thompson, for the purpose of having an operation on the daughter's throat. The doctor who was to perform the operation officed in the Goodhue building. On that morning Mrs. Shivers went into the drug store and was served. In the afternoon, about 4 p. m., while waiting for her daughter to return to her home, she, Mrs. Shivers, again went into the drugstore and seated herself on one of the stools and

654

was served coffee. When she attempted to leave the stool, after arising from the stool and turning, she fell off onto the cement floor and was seriously injured, breaking one leg just below the hip, and was confined in a hospital for months and was accompanied home by a trained nurse who stayed with her at her home for many weeks. This suit for damages followed.

Inspection of appellees' petition, supra, discloses that the negligence alleged as the basis for the suit is that appellant was negligent in placing the stools upon a narrow platform itself only 24 inches wide and 9¾ inches high with 11½ inches space between them for all persons, old or young, to use while being served at the counter. In other words that the negligence consisted of the arrangement of the fixtures for seats, and not the plan or design of them. Mrs. Shivers testified that she and her daughter went into the drugstore that day in the forenoon and she sat down on one of the stools and got something to drink. That she went in the drugstore again that afternoon and bought some listerine and then sat down on one of the stools and was served coffee and then got up, turned around to step off and tripped on something and fell. She said: "I don't remember. I just remember sitting down. I don't remember about the platform either in the morning or in the afternoon. I don't remember anything about the platform. I just remember sitting down at the counter."

"Q. Do you remember how you sat down, whether you stepped up on the platform first or backed up to it and turned around, or how you did it? A. I just remember sitting down.

"Q. Well, when you went to leave there were you trying to step to the floor or were you trying to make a step on the platform and then to the floor? A. Well, I just reached and picked up my purse and my listerine and turned and stepped away and was tripped.

"Q. What I am getting at, is whether you were trying to make a step on the platform, or whether you were trying to make a step right to the floor? A. I don't remember anything about a platform. I just remember stepping.

"Q. You don't remember where you were trying to step? A. No, I just remember stepping and being tripped, falling.

"Q. Were you looking down at the step when you left it? A. I couldn't say.

"Q. You don't know whether you were looking down then or not? A. No, I don't know which way. I just stepped in the usual way. * * * I just felt like I was in a safe place and just stepped like any one else would."

We do not feel that a setting out of the voluminous testimony would be of any avail. What is stated above comprehends practically all of Mrs. Shivers' testimony as to how the accident occurred. The decisive question is, was the making and maintaining of the accomodations offered by appellant for the service of its patrons in the manner it did, negligence, and under all of the circumstances, if it was negligence, was such negligence the proximate cause of the injury, and should such occurrence or one of its nature have been foreseen by appellant.

The jury found in answer to special issues properly submitted to them that appellant was guilty of negligence and that such negligence was the proximate cause of the injury suffered by Mrs. Shivers. They also acquitted Mrs. Shivers of contributory negligence. They further found that the injury was not the result of an unavoidable accident. We think the findings have support in the evidence. Mrs. Shivers was an invitee of appellant. It prepared its place for business, arranged for the accommodation of its patrons when they were being served. It is unquestioned law that one who invites the public to enter into or upon his premises for business purposes is duty-bound to see that his premises, or the instruments or furnishings he offers for their use, are reasonably safe—the invitee has the right to presume that such care has been taken, and may rely upon that presumption. It is not the duty of the invitee to inspect or search the things offered for defects or dangers. The stools were not placed in the usual way upon the floor of the building, but upon a platform 9¾ inches high above the floor. It is insisted that they were constructed and placed in the usual way. It is common knowledge that in equipping restaurants and drugstores for service to the public, in Texas, the stools always have been and now are placed upon the floor, not a raised platform. A witness for appellant who was engaged in the sale of fixtures like those in question and who in fact supplied these very fixtures, testified that they were constructed in the usual way, but he evidently had in mind the "usual way" of constructing that type of

fixtures. In answer to the question "how many of such fixtures were in use in Texas," he answered *probably as many as 25*," but when asked to locate them, he could name only seven, two in Jefferson County —one in Beaumont, the one here involved, and one in Port Arthur, and four in the City of Houston, and one in El Paso, and that he did not know of any being installed in the last two years. We think it rather remarkable that in a city like Houston of about 400,000 population with its many dozens of restaurants and drugstores only four could be found. Beaumont and Port Arthur with their combined population of some 130,000 and many such places of business, the two of them could boast of but two fitted out as the appellant's place. In fact the record reflects that none, other than the two mentioned, could be found in *all East Texas*. One not having ever used such arranged and constructed accommodations, it occurs to us, might very properly be expected to have more or less trouble and confusion in using them.

It is said that being an invitee she must take the premises or arrangements as she finds them. It appears that she did this relying upon appellant's having discharged its duty and have exercised reasonable care to have its premises and accommodations in a reasonably safe condition for her protection and use, as the law required it to do, and in endeavoring to use the novel and unusual fixtures prepared for her, she received serious bodily injury, which result was not caused by any negligence on her part as found by the jury. The court did not err in refusing the request for an instructed verdict. The assignments are overruled.

What we have said disposes of appellant's third, fourth, sixth and seventh assignments.

Appellant cites us to the case of Marshall v. San Jacinto Building, Inc., Tex.Civ.App., 67 S.W.2d 372, writ refused, as directly in point and controlling the instant case. That decision was by this court. We think the decision correct. But we think that case may be distinguished from the instant case on the facts. There the entrance into the hallway that led to the elevators was equipped with a revolving door. This revolving door opened out onto the street. The street was paved, and the sidewalk was laid immediately against the wall of the building. The entrance to the building was not flush (even) with the street, but was set back a sufficient distance to permit operating the revolving door without having it to swing out over the sidewalk. In revolving, the wings of the door came within three or four inches of the edge of the sidewalk. At the time the building was erected, a granite slab about thirteen inches wide was built into the entrance over which it was necessary to walk in entering the building and over which the revolving door was operated. The sidewalk was built up to and against this granite slab. The slab was flush with the floor of the building on the inside of the entrance. On the left side of the entrance the slab was flush with the sidewalk, but for the entire width of the entrance it was laid level and flush with the floor of the building while the sidewalk was made to conform to the grade of the street which had a gradual slope. The result was that immediately opposite the left side of the revolving door entrance the granite slab had an elevation of one-eighth of an inch above the sidewalk; immediately opposite the middle of the entrance the elevation was one-fourth of an inch; immediately opposite the right side of the entrance the elevation was one-half of an inch; and immediately opposite the extreme right side of the eleven foot entrance the elevation was seven-eighths of an inch. In other words, the elevation of the granite slab extending across the entrance was ⅛ of an inch on the left of the door and gradually increased with the downward slope of the street to ⅞ of an inch at the extreme right. The elevation, as noted, was ¼ of an inch in the middle of the entrance—that part over which persons passed in entering the building. Marshall in entering the revolving door stumbled over this elevation, fell and was injured for which he sought damages. Marshall had lived in Beaumont for many years—some twenty—was entirely familiar with the situation of premises, having made use of the revolving door in entering and leaving the building many times.

We think there is a vast difference in the facts of that case and those of the instant case. Here the lunch counter extended along the wall some 24 feet to a height of about 42 inches from the floor. There was a platform 24 inches wide extending along the side of the counter, rising from the floor of the building 9¾ inches above the floor at right angles to the floor. On this platform there were 11 stools, firmly fixed to the top of the platform. They were immovable except that the tops would turn. There was a space of 11½ inches between the stools, that

is, from the edge of the top of one to the edge of the top of the one next to it. The platform was covered with smooth or glazed title, darkish in color. The edge of the platform was smooth tile and at right angles. To occupy one of the stools the person must step up on the narrow platform, turn sideways in the 11½ inch space and sit down on the stool, then turn facing the counter to be served. When vacating the stool it was necessary to turn sideways, pass between the stools and then step off of the platform to the floor. The surface of the platform and the edges of same were of smooth tile, rendering it easy for the foot to slip. The facts and elements involved in the instant case are much more numerous and complicated than in the Marshall case. The construction of the platform and the placing of the stools on the platform was not in accord with the long used and commonly understood way of placing the stools on the floor of the building along the counter. Mrs. Shivers did not live in Beaumont or Jefferson County, but resided in Hardin County, where she had lived for more than twenty years; she had never seen any other stools arranged as the ones involved; she had been in the drugstore but one time prior to the time she was injured, she had been served at the counter but the one time before; she was not in any degree familiar with the arrangements, but was entirely unfamiliar with same; unlike Marshall, she had not had occasion to use the stools many times; she was 66 years of age and all her life had used the old styled floor stool on such occasions. None of the extra movements were required to use the stool to which she was accustomed. The fact that people in the vicinity were and always had been accustomed to the use of stools placed on the floor of the building next to the counter was likely to cause them to fail to observe the innovation in the placing of the stools in the usual position on the raised platform. All these facts, it occurs to us, strongly differentiate the instant case from the Marshall case. In cases of this nature, each case must be determined by its own facts. We have no quarrel with the decisions cited by appellant as sustaining its contention of no liability, but we do not think they are controlling under the peculiar facts of the instant case.

As before stated, it was not the duty of Mrs. Shivers to search or inspect the complicated furnishings to be used by her for dangers. It was the duty of appellant to use reasonable care to furnish reasonably safe means for her to use in patronizing its place of business. She had the right to rely upon appellant's having discharged its duty in this respect and to accept and use the means supplied as being reasonably safe. That the stools and their arrangement were open and obvious did not remove from appellant all liability. Granted that Mrs. Shivers could have observed the manner of means she was invited to use for her accommodation, even so the duty of appellant to furnish reasonably safe means to its patrons still existed. Henry v. Publix Theatres Corp., Tex. Civ.App., 25 S.W.2d 695; Gulf, C. & S. F. R. v. Irick, Tex.Civ.App., 116 S.W.2d 1099.

It is idle to say that appellee was guilty of contributory negligence, as a matter of law. To do so would be to acquit appellant of negligence merely because the situation was open and appellee had the opportunity to investigate whether or not the means offered for her accommodation were safe.

By its fifth assignment appellant says that the undisputed evidence established that its soda fountain had been in constant use since 1928, and that approximately 1,000,000 persons had been served at it and no complaints had been made and no claims filed on account of any injury received at same, and that as but one other person had fallen from same, and she had not presented claim for damages, it was error to refuse its motion for an instructed verdict "in that under all of the evidence defendant had a right to rely upon its previous experience, which had demonstrated the soda fountain and platform here involved to have been safe, and there being no evidence that defendant could have reasonably foreseen or anticipated that anyone would receive injuries on account of such."

Appellees reply to this proposition, as follows: "If the evidence had established that the defendant had used the appliances in question for a long period of time without injury to anyone (which the evidence did not do), and if the evidence had shown that the appliances in question were in use by a large number of other persons engaged in the same character of business, or indeed that such appliances were in universal use by such other persons (which the evidence did not show,

but showed quite to the contrary), still, whether the defendant, appellant here, had used ordinary care or had been guilty of negligence as charged, under all of the circumstances alleged and proved, was a question of fact for the jury to pass upon, as was also whether such negligence proximately caused the injury complained of; and the jury having found there was negligence that proximately caused the said injury, under all the circumstances, the case has been determined by the trial court according to the legal standards that have application in this State, and the appellant could not immunize itself from liability by showing that other persons had not sustained injuries or had not asserted claims against it through a long period of time."

In French v. Southwestern Telegraph & Telephone Co., Tex.Civ.App., 162 S.W. 406, 408 (Id., 110 Tex. 505, 221 S.W. 570), it is said:

"The fact that appellee and other companies had habitually and customarily used the same does not, of itself, show that they had exercised ordinary care. The rule is so aptly stated in Morgan & Bros. v. Missouri, K. & T. Ry. Co., of Texas, 50 Tex. Civ.App. 420, 110 S.W. 978, that we quote from the opinion as follows: 'The appellants offered to prove by J. M. Byrnes that he was familiar with the method of construction of the various compresses in Texas, and their platforms, and familiar with the location of same with reference to railway tracks, and with the method of their operation and of handling and storing cotton on their platforms, and that the construction and location of the compress at La Grange was practically identical with that of said other compresses in Texas, and that the method in use by the La Grange & Lockhart Compress Company in the storage of cotton in its compress and on its platforms, and in the handling of cotton in its compress at the time of the fire, was the same as in use at all other compresses. The court sustained an objection to the testimony, and appellants reserved a bill of exception, and this action of the court is made the basis of their twenty-eighth assignment of error. Appellants contend that, as the compress in question was constructed just as every other compress was in Texas, and its cotton handled just as every other compress in Texas handled cotton, the La Grange & Lockhart Compress Company

could not have been guilty of negligence, because, if it did as every other compress company did, its action would constitute ordinary prudence. The assignment is without merit. The habitual practice of any number of compresses, for any period of time, cannot make a negligent act an act of due care and diligence. The test is, Did the compress company exercise ordinary care, that is, such care and caution in the storing or handling of cotton as a person of ordinary prudence would have exercised under the same circumstances?' The case of Lyon v. Bedgood, 54 Tex.Civ. App. 19, 117 S.W. [897] 900, is very much in point. The negligence relied on in that case was the failure to equip a turnbuckle with jam nuts at each end to prevent the turnbuckle from unscrewing and coming loose. The jam nut was a safety device very similar in its purpose to the safety device on the hook. The defendant contended that, as the equipment of the defendant was similar to that in use by other companies, they were not negligent in failing to use the jam nut, but the court overruled this contention, and held that the question whether or not the failure to use the jam nut was negligence upon which the plaintiff might recover was a question of fact for the jury and not one of law for the court. In the case last mentioned, the court says: 'There was no error in refusing to give the requested instruction that, if the equipment used by defendants was such as was in general use among reasonably prudent persons engaged in the same business, defendants were in the exercise of ordinary care in using it. We do not think this is the rule in this state. Evidence of such use by other persons engaged in the same kind of business is admissible upon the issues of ordinary care, but the question * * * is whether, under the facts of the particular case, there has been an absence of ordinary care.'

"It matters not, therefore, if appellee and other telegraph and telephone companies have habitually used the open hook for the purposes for which the hook here in question was used. Such habitual and continuous use will not convert negligence into ordinary care. A similar contention was likewise made in Hamilton v. Des Moines Val. R. Co., 36 Iowa 31, where an employé, while attempting to couple a car, was injured by a projecting timber. The defendant company requested the following

charge: 'If the car of timber which hurt the plaintiff was loaded as loads of timber had been usually and commonly loaded and carried over defendant's and all other railroads, then it was not negligence in defendant to carry timber upon which the plaintiff was hurt.' In disposing of the instruction, the court says: 'The instruction was properly refused, for the obvious reason that habits of negligence on the part of the defendant or other railroads will not relieve them from the consequences of their own negligent acts. If, because an act is usual and common, it ceases to be negligent, it follows that the sure way of escaping liability from injuries, in cases of this character, would be to adopt a certain and uniform system of carelessness.'

"In further support of the views here expressed upon the impropriety of the peremptory instruction, see, also, St. Louis Southwestern R. Co. of Texas v. Neef [Tex.Civ.App.], 138 S.W. 1168; Waters-Pierce Oil Co. v. Snell, 47 Tex.Civ.App. 413, 106 S.W. [170] 173; Missouri Pac. R. Co. v. Wortham, 73 Tex. 25, 10 S.W. 741, 3 L.R.A. 368; Gulf, C. & S. F. R. Co. v. Evansich, 61 Tex. [3] 5; Gulf, C. & S. F. Ry. Co. v. Smith, 87 Tex. 348, 28 S.W. 520; Fuchs v. City of St. Louis, 133 Mo. 168, 31 S.W. 115, 34 S.W. 508, 34 L.R.A. 118."

In Galveston, H. & S. A. R. Co. v. Contois, Tex.Civ.App., 279 S.W. 929, 933, it is said:

"We overrule appellant's eighth proposition, that the jury's finding in answer to question No. 2 is not supported by the evidence. We do not agree with appellant's contention that negligence cannot be based on the doing of a thing in the way it is commonly done by everybody. We think and reaffirm the doctrine as set out by this court in Magnolia Paper Co. v. Duffy [Tex.Civ.App.], 176 S.W. 89. In writing the opinion for the court, our Chief Justice said:

" 'It was for the jury to say whether ordinary care had been used in furnishing a machine without a foot brake and guard or fender. The mere fact that the machine was one customarily used for such purposes would not, as a matter of law, exonerate appellant from blame. It is the rule laid down by the Supreme Court of the United States, as well as the Supreme Courts of a number of states, that, after it has been shown that the defendant had used the same appliances used by other employers in the same line of business the question still was open as to whether the particular instrumentality was reasonably safe, and that it is an issue for the jury. * * *

" 'Even though instrumentalities are the same as those used by all others in the same line of business, it is held in Texas that the use of such appliances may be negligence, and it is for the jury to determine whether the use of the machine was negligence or not. Gulf, C. & S. F. Railway Co. v. Evansich, 61 Tex. 3; Gulf, C. & S. F. Railway Co. v. Smith, 87 Tex. 348, 28 S.W. 520; Weatherford, M. W. & N. W. Railway Co. v. Duncan, 88 Tex. 611, 32 S.W. 878; Sincere v. Union Compress & Warehouse Co., Tex.Civ.App., 40 S.W. 326; Kirby Lumber Co. v. Dickerson, 42 Tex.Civ.App. 504, 94 S.W. 153; Lyon v. Bedgood, 54 Tex.Civ.App. 19, 117 S.W. 897; Wirtz v. Galveston, H. & S. A. Railway Co., 63 Tex.Civ.App. 72, 132 S.W. 510; St. Louis Southwestern Railway Co. of Texas v. Neef, Tex.Civ.App., 138 S. W. 1168.

" 'The standard of care exercised by a master is not what other masters do under like circumstances, but, *as in all cases,* the standard must be the *exercise of ordinary care.* Proof that an instrumentality is the same used by other masters in the same business may be a circumstance to be considered by the jury in passing upon the question of negligence, but in the final analysis of the matter ordinary care must be the test applied. Labatt, Mast. & Serv., § 947, and authorities cited in footnotes.' [Italics ours].

"The same rule is followed and announced in French v. Southwestern Telegraph & Telephone Co., Tex.Civ.App., 162 S.W. 406; Gordon Jones Construction Co. v. Lopez, Tex.Civ.App., 172 S.W. 987; Batson-Milholme Co. v. Faulk, Tex.Civ.App., 209 S.W. 837 [839].

"Whether or not the work was done by a method ordinarily in use and practice does not relieve the question of ordinary care or negligence. It is at least an issue of fact for the jury, and it is no defense against the negligent act that the thing done was done in the usual way."

See, also, Texas & N. O. R. Co. v. McNeill, Tex.Civ.App., 270 S.W. 1038.

The assignment is overruled.

 We overrule the eighth assignment. It asserts that the evidence shows

that Mrs. W. G. Shivers failed to observe the arrangement of the stools on the platform, and since the stools and their arrangement were open and obvious, and appellee failing to offer any excuse for her failure to observe the stools and platform, it was error to refuse appellant an instructed verdict. On special issues properly submitted, the jury acquitted appellee of contributory negligence. Whether she was guilty of contributory negligence was for the jury and they found against appellant's contention. The circumstances attending an injury commonly afford evidence on the issues of negligence, contributory negligence and proximate cause. As a rule negligence may be inferred from the circumstances of the particular case, and both negligence and proximate cause may be established by circumstantial evidence. Judge Strong, speaking for the Commission of Appeals, in Bock v. Fellman Dry Goods Co., 212 S.W. 635, 636, said: "The plaintiff was not required to exclude the probability that the accident might have occurred in some other way. To so hold would impose upon her the burden of establishing her case beyond a reasonable doubt. She was only required to convince the jury by a fair preponderance of the evidence that the accident resulted from the negligence of the defendant. While it is true, as held by the Court of Civil Appeals, that in order to show that defendant's negligence was the proximate cause of the injury the evidence must present something more than mere conjecture or surmise, it is equally true that the cause of an accident may be inferred from the circumstances. Both negligence and proximate cause may be established by circumstantial evidence." It cannot be said Mrs. Shivers was guilty of contributory negligence as a matter of law. Whether she was guilty of negligence in attempting to use the stools and platform in the manner she did was one of fact for the jury. Trochta v. Missouri, K. & T. R. Co., Tex.Com.App., 218 S.W. 1038; Galveston, H. & S. A. Ry. Co. v. Price, Tex. Com.App., 240 S.W. 524; Ferrell v. Beaumont Traction Co., Tex.Com.App., 235 S. W. 531. In the case of Gulf, C. & S. F. R. Co. v. Irick, Tex.Civ.App., 116 S.W.2d 1099, 1103, it is said: "Even where an injured person has knowledge, actual or imputed, of a defect, if in the exercise of ordinary care he would not realize or anticipate the dangerous consequences, a question is still presented for jury determination."

The rule is well settled that no one is called upon to anticipate that another has been guilty of negligence or will be guilty of negligence, or will violate a law, or fail to perform a duty. Certainly, then, an invitee should not go upon premises anticipating that there is a dangerous condition in the premises caused by the negligence of the owner or invitor. More particularly, an invitee would not be required as a duty to be looking out for dangerous conditions under the further rule well .established in this state, that there is an implied warranty extended to invitees that care has been exercised for their safety.

Various assignments are presented urging error in the court's refusing to give certain requested special issues. We have examined each of them, and it is not believed that any error is shown. The assignments are overruled. No good purpose would be served by discussing them separately, and such discussion would render this opinion inordinately long.

Special issue No. 9, submitted by the court, reads:

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would reasonably compensate plaintiffs for the injuries sustained, if any, by the plaintiff, Mrs. W. G. Shivers, proximately caused by the happening to her in question?"

"Answer by giving the amount in dollars, or answer 'None.'

"In answering Special Issue No. 9 you are instructed that you may take into consideration the following matters and things and no others:

"The injuries, if any, sustained by the plaintiff Mrs. W. G. Shivers, including the physical and mental pain and suffering, if any, sustained by her up to the time of this trial, and physical and mental pain, if any, which in reasonable probability she may suffer in the future beyond the date of this trial. And you may take into consideration the pecuniary value of the diminished capacity, if any, of Mrs. W. G. Shivers for work and service as a housewife.. And you may take into consideration the reasonable value of necessary doctors' services, if any, not exceeding the sum of $360.00, and the reasonable value

of necessary hospital services, if any, not exceeding the sum of $185.00, and the reasonable value of necessary nurses' services, if any, not exeeding the sum of $820.00 already rendered to the plaintiffs in the treatment of the injuries of Mrs. W. G. Shivers, if any. You cannot take into consideration the diminished capacity, if any, of Mrs. W. G. Shivers to carry on the work of running or operating a boarding house." To this special issue, appellant objected:

"This defendant objects to Special Issue No. 9 of the court's charge and the court's instruction in connection therewith because:

"(f) Said issue is confusing and calculated to mislead the jury into allowing double damages, in that it allows the jury to determine the amount of money which would reasonably compensate plaintiffs for the injuries sustained by Mrs. W. G. Shivers, when only one injury has been sustained and the damages, if any, proximately caused by such is one indivisible amount;

"(h) Said issue erroneously submits to the jury the question of what sum of money would reasonably compensate plaintiffs for the injuries sustained by Mrs. Shivers and thus is calculated to cause the jury to allow double damages, in that they will attempt to ascertain and fix the amount of damages accruing to each of the plaintiffs herein;

"(m) Said issue erroneously submits the question of what sum of money would reasonably compensate plaintiffs and is thus calculated to lead the jury into allowing excessive damages and double damages, in that there is no different or divisible sum due to plaintiffs, or either of them, in this case, but on the contrary, the damage, if any, they are entitled to recover herein is one indivisible amount."

"(d) Said issue and instruction is erroneous and calculated to cause the jury to ascertain or arrive at some sum which they believe will reasonably compensate the plaintiff, Mrs. W. G. Shivers, and also some sum which they believe will reasonably compensate the plaintiff, Mr. W. G. Shivers, and answer said issue, by giving the total of said amounts and as a matter of law the damage, if any, is but one amount and cannot and should not be so calculated."

The special issue was not subject to any of the exceptions. The assignment is overruled.

We overrule assignments eighteen and nineteen complaining of alleged improper argument of counsel for appellees to the jury. Because of the great length to which this opinion has grown we do not set out either the assignments or the argument complained of, but we have carefully considered the quoted argument in appellant's brief together with all of the facts in the record, and do not believe that the argument was improper, or prejudicial.

All assignments not discussed have been considered, and none of them showing reversible error, are all overruled.

The judgment should be affirmed, and it is so ordered.

Affirmed.

WALKER, Chief Justice.

On the evidence in this case—the evidence was without dispute on all controlling points—did there arise against appellant the inference of negligence as the proximate cause of Mrs. Shivers' injury? Mr. Justice O'QUINN has prepared the opinion of the court answering this question in the affirmative.

On the undisputed facts, it must be said that the construction of the platform and the stools was open and obvious to all who had occasion to use them, and that Mrs. Shivers had used the platform, and at least one of the stools, prior to the time she was injured. It must also be conceded that there was no structural defect in the platform, counter, and stools, and that they were all in good repair. The evidence did not raise the issue that the platform and stools "were novel and unusual fixtures," but on the undisputed evidence there were "probably as many as 25" in use in Texas—two in Jefferson County, one in Beaumont and one in Port Arthur. In many other states, the platform and stools constituted an accepted method of installing soda fountains. In so far as they were put in issue by the facts of this case, the platform and stools "were not novel and unusual fixtures" for the reason that Mrs. Shivers had had an opportunity to observe them, and in fact had observed them and used them prior to her injury. On this point, the very fixtures in issue had been in use by appellant in its drugstore in the Goodhue Building for about nine years; almost a million customers had used them, and only one other accident from their use was shown by the evidence.

The following legal points advanced by appellant are clearly established as the law of this State: (1) A merchant does not owe to his customers, using his premises, the duty of an insurer; he owes them only the duty to exercise ordinary care for their protection. Worth Food Markets v. Le Baume, Tex.Civ.App., 112 S. W.2d 1089; Graham v. F. W. Woolworth Co., Tex.Civ.App., 277 S.W. 223. (2) Appellees rested under the burden of establishing against appellant the issues of negligence, plead as the basis of their cause of action, as summarized by Mr. Justice O'QUINN. Mauk v. Texas Pipe Line Co., Tex.Civ.App., 93 S.W.2d 820. (3) To establish negligence, appellees rested under the burden of showing that appellant owed them a duty in relation to the matters charged in their petition and that it had breached that duty. St. Louis Southwestern R. Co. of Texas v. Pope, 98 Tex. 535, 86 S.W. 5. (4) Appellees also rested under the burden of showing that appellant should have reasonably foreseen or anticipated that someone would suffer an injury, proximately resulting from the construction and operation of the soda fountain, counter, and stools. Texas & P. R. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162, 163; City of Dallas v. Maxwell, Tex.Com. App., 248 S.W. 667, 27 A.L.R. 927. (5) By the opinion of this court in Marshall v. San Jacinto Bldg., Inc., Tex.Civ.App., 67 S.W.2d 372, 374, writ refused, the following proposition of law from 45 C.J. 837, was cited with approval, and constituted the very basis of our judgment:

"The duty to keep premises safe for invitee applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care."

See, also, Texas & P. R. Co. v. Howell, Tex.Civ.App., 117 S.W.2d 857, where this proposition is cited with approval. We note that appellees say in their brief that the proposition "does not reflect the rule of law as it obtains in Texas, and indeed Corpus Juris cites no Texas case. It is not believed that this Court intended to lay down any such rule, because the matter as quoted from Corpus Juris in that respect is plainly without support in the decisions of the Texas courts."

The controlling force given by this court to the proposition in the Marshall case answers appellees' criticism.

The authorities cited by appellant in support of its motion for an instructed verdict rest upon the fact conclusions both that the construction in issue was open and obvious and also that its proper use and the inherent dangers in its use were open and obvious. In Main v. Lehman, 294 Mo. 579, 243 S.W. 91, 95, the decision rested upon the point that the invitee had full knowledge and information of "the step or other obstruction." In Vaissiere v. J. B. Pound Hotel Co., 184 Ga. 72, 190 S.E. 354, 355, "the plaintiff was obliged to step up to get on the rostrum." In these cases there was no hidden danger in the situation created by the obstructions. The dangers inherent in the use of the premises were as open and obvious as the obstructions themselves. In the Marshall case, supra, by this court, the granite slab that caused the plaintiff to stumble as he entered the revolving doors had an elevation of $\frac{1}{4}$ of an inch above the sidewalk; there was no hidden danger in stepping from the sidewalk upon the granite slab. A person seeing it necessarily knew the dangers of stumbling by tripping the foot against its raised edge.

The rule announced in the cited cases, to the effect that the duty to keep the premises safe for an invitee applies only to hidden dangers, traps, pitfalls and the like, is not only the rule in Texas, but like most rules which have long received the sanction of the American courts, it is, we think, sound in principle. That rule, however, does not deny Mrs. Shivers' recovery in this case. On the facts, her injury did not result alone from the manner of the construction of the stools and the platform, but from dangers inherent in the use which the public was invited to make of them. These dangers were not so open and obvious that a court would be warranted in holding, as a matter of law, that she necessarily knew of them or that appellant was not negligent in failing to anticipate that some such injury as that sustained by her might occur.

This was a soda fountain, constructed and operated by appellant as a

place of relaxation; a place of escape from the cares of the daily grind; a place of refreshment for the tired and weary; a place to sit and rest for a few minutes and forget "dull care." Appellant's invitation was: "Come to my soda fountain and drink my coffee and my beverages. Not only is my soda fountain constructed so as to secure your safety, but you will find no hidden danger in its use; you can sit down in safety and get up in safety; you need take no special precaution not required for your safety in the general run of such places, which you have long patronized and to the use of whose facilities you are so accustomed that the manner of such use is with you largely a matter of habit rather than deliberation." Such was the invitation. On that invitation Mrs. Shivers went to appellant's soda fountain, stepped upon the platform and seated herself upon one of the stools. She necessarily saw the raised platform and the general arrangement of the stools. As she sat at the counter and drank her coffee her feet rested upon the platform at a normal distance below the seat of the stool and in as comfortable a position as she would have been in had the stool been sitting on the floor. But the platform was narrow, only 24 inches wide and it was raised 9½ inches above the floor level, or nearly twice the height of an ordinary stair-step. When she had finished drinking her coffee it was necessary for her to pick up the sales ticket and swing around, or partly around, on the stool. The stools were only 11½ inches apart and if those next to her were occupied she would probably experience some difficulty in leaving the counter. The platform immediately beneath her feet and between the stools might easily have been obscured from her view so that she would not see the edge of the platform. It was of glazed tile construction and if she stepped upon the edge it was easy for her to slip and fall as she arose to her feet. Or if she turned entirely around on the stool, her feet would not have come in contact with the platform at all because of the narrowness of it, but she would have stepped directly on to the floor, which was more than 9 inches farther from the seat of the stool than the normal height of such a stool from the floor, a fact which she might at the moment have been justifiably ignorant of. Dropping to the floor that added distance and not finding the floor at the normal distance expected, may have caused her to fall. Mrs. Shivers did not know just what caused her to fall but that she did fall and receive a serious injury is not questioned. It is our view that, under the facts, the issues of whether or not the defendant was negligent and whether or not the plaintiff was guilty of contributory negligence were fact issues for the jury, and that the answers of the jury resolving these issues against the defendant and in favor of the plaintiff have sufficient support in the evidence to sustain them.

That appellant followed an approved method in constructing its soda fountain was merely evidentiary on the issue of whether or not it should have foreseen the injury suffered by Mrs. Shivers. Merchants' & Planters' Oil Co. v. Burns, 96 Tex. 573, 74 S.W. 758; San Jacinto Bldg. v. Washington, Tex.Civ.App., 122 S. W.2d 289. The fact that a million customers had used the soda fountain with only one injury reported to appellant was also merely evidentiary on the issues of negligence. San Jacinto Bldg. Co., Inc., v. Marshall, supra.

For the reasons stated, the court did not err in refusing to instruct a verdict in favor of appellant. Except as hereby modified, the opinion prepared by Mr. Justice O'QUINN is accepted as the opinion of the court.

COMBS, J., concurs.