**Glen MEALOR, Appellant,**

v.

**S. H. LEGGITT & CO., Appellee.**

**No. 17964.**

Court of Civil Appeals of Texas, Fort Worth.

May 18, 1978.

Bader, Wilson, Menaker, Cox & Branson, and Bertran T. Bader, III, Dallas, for appellant.

Charles Ways, Dallas, Gardere, Porter & DeHay, and Gordon H. Rowe, Jr., Dallas, for appellee.

## OPINION

HUGHES, Justice.

Glen Mealor sued S. H. Leggitt & Co., a corporation, for damages in a personal injury suit. Trial court granted a motion for directed verdict requested by Leggitt at the time both parties had closed. Mealor has, appealed from the take-nothing judgment based on such verdict.

We reverse and remand.

Mealor, at the time he fell through the Leggitt ceiling, was owner and operator of an appliance shop and repair service. Leggitt engaged Mealor's company to repair a furnace. Mealor went to Leggitt's warehouse to assist Mealor's employee, Dan Whitaker, repair a furnace unit sitting on a wooden platform on top of joists in the attic of such warehouse. Mealor went into the attic with Whitaker, carrying a flashlight which he said he was using. He sat down, by his testimony, at the front of the heating unit to see if the pilot light was on. While leaning back to look up under a cowl covering the pilot light he fell into an unfloored part of the attic where there was only soft insulation covering the ceiling material attached to the joists on their under side. He went through the ceiling material and fell 5 to 8 feet to the floor of the coffee room below.

Mealor alleged Leggitt was negligent in:
1. Failing to adequately light the area where he was working;
2. Failing to warn Mealor of the small flooring area at the front of the furnace;
3. Failing to warn Mealor that the flooring in front of the furnace was not large enough for him to lean back to inspect the pilot light without getting on to the ceiling;
4. Failing to warn Mealor that the area around the floor would not support him;
5. Maintaining a ceiling not strong enough to support workers invited by Leggitt to work on its premises; and
6. Failing to provide Mealor a safe place to work.

The motion for directed verdict made by Leggitt urged that:
1. The danger, if any, was open and obvious;
2. No evidence raising any issue of negligence by Leggitt; and
3. Mealor was guilty of contributory negligence in failing to keep a proper lookout, which was the sole cause of the accident.

The injury in this case occurred on November 16, 1970. Comparative negligence was not in effect until September 1, 1973, and then with no retroactivity to cases arising before such date.

No findings of fact and conclusions of law were requested in this case. Tex.R.Civ.P. 296. We must sustain the judgment of the trial court if it is sustainable on any theory of the case. 4 Tex.Jur.2d

Part 2, § 735 (1959), bearing in mind that we can only uphold the directed verdict judgment after determining whether there is any evidence of probative force to raise fact issues in material questions presented. In this connection, we must consider all evidence in its most favorable light in support of Mealor's position, discarding all contrary evidence and inferences. *Anderson v. Moore,* 448 S.W.2d 105 (Tex.1969). Where reasonable men may differ as to the truth of controlling facts, a jury issue is present. *Najera v. Great Atlantic & Pacific Tea Co.,* 146 Tex. 367, 207 S.W.2d 365 (1948).

Mealor admitted on the witness stand that he had heard about Whitaker's falling through the same ceiling on a previous repair trip but had "*completely forgot* about it."

Referring to the amount of light in the attic and his conduct at the time of his fall the testimony of Mealor was:

"Q What was under you right at the area right immediately around the furnace?

"A Well, around the furnace where the furnace themselves set and an area around it was, there was some kind of lumber there, flooring, and I would say it was probably made, and I'm guessing, probably made out of two by sixies or something like that. I do know it was solid.

"Q Lumber setting up on top of the joists, made a flooring?

"A Yes, just a regular flooring, like the floor down here.

"Q 'And it was both at the furnace and right in the immediate area of the furnace?

"A Yes sir.

"Q It's my understanding that the floor, I believe, was more at the back towards the controls and there was less flooring about where the pilot light was?

"A Up towards the front of it there was evidently not too much flooring.

"Q Can you describe the lighting conditions up there, sir, as you recall?

"A Yes, sir. As I recall it, it was rather dark. Now, when I say 'rather dark,' I don't mean it was like night by no means. But I would describe it as dusky dark because we was using a flashlight to see what we was doing around the furnace. There definitely was not enough light up there that you could see what you were doing without a flashlight.

"And there was no lights overhead burning, period. I've heard the testimony otherwise but it wasn't there.

"Q How about skylights? You remember seeing any skylights there?

"A Not to my knowledge. I'm not saying they wasn't there but they wasn't over the area where I was working.

"Q In any event there was not a great deal of light in the area?

"A No, sir.

"Q All right, sir. Now, after you got through fiddling with the controls on the side or on the back where did you go?

"A Well, Dan was back there with the controls. I went to the front of it to be sure the pilot light was on since the, I mean, the thermo-coupler won't work unless the pilot light is burning. And I sat down in front of the furnace to look at the controls or look at the pilot light inside of the furnace, up inside of it.

"Q What kind of position did you have to get into to be able to look up into it?

"A Well, I sat down on the floor, and as I remember, the furnace was right down against this floor and that piece you had to look into was pretty close to the bottom.

"Q All right, sir.

"A And I sat down on the floor by, in front of the furnance, (sic) and I leaned back here to look at the pilot light. (Illustrating)

"Q And when you did that what do you remember next?

"A When I did that, the best I know, I leaned back and fell through that, whatever you call it, the ceiling.

"Q You apparently got off of the hard flooring and onto the softer material?

"A Yes, sir.

**54**

"Q Did you realize you had gotten off of the flooring until after you had fallen?

"A No, sir.

.    .    .    .    .

"Q Now, you could see up there, couldn't you?

"A Sir, I could see after I got up there although it was dark. It was not night-time-dark.

"Q You had a flashlight there, didn't you?

"A We had a flashlight; yes, sir.

"Q All right. And you had an opportunity to shine that light around there and see everything there was about that place, did you not?

"A I suppose I had an opportunity; I don't know. I didn't.

"Q All right. You weren't paying too much attention to it?

"A I was interested in the furnace, sir'. That's what I was called there for, and that's where I went.

"Q You weren't paying too much attention to anything else around there?

"A I wasn't surveying the building; no, sir."

■ Even though Mealor's own testimony reflected actual knowledge of the danger of falling through the same ceiling as his servant had done previously as well as his knowledge of the poor lighting and the narrow platform provided for his use, we cannot hold that, as a matter of law, he failed to keep a proper lookout. "It is the law that the ordinary invitee can presume that the premises are safe and it is not his duty to search the things offered for defects." *Blanks v. Southland Hotel,* 149 Tex. 139, 229 S.W.2d 357 (1950). *Walgreen Texas Co. v. Shivers,* 131 S.W.2d 650 (Tex.Civ. App.—Beaumont 1939), rev'd on other grounds, 137 Tex. 493, 154 S.W.2d 625 (1941).

We sustain the point of error citing insufficient evidence for a finding of contributory negligence as a matter of law.

■ Since evidence of probative value was introduced from which a jury might have found negligence on the part of Leggitt in not having a large enough platform to keep workmen from going through the ceiling. Leggitt had the knowledge of Whitaker's fall to put him on notice. This, plus the poor lighting testified to by Mealor, moves us to sustain the point of error citing introduction of sufficient evidence of probative value of Leggitt's negligence causing injury to Mealor.

Though the circumstances in this case indicate an open and obvious danger of which Mealor should have been aware the fact is without any conclusive effect in view of the abolition.of the former doctrines of "no duty" and of "volenti non fit injuria". *Farley v. M M Cattle Company,* 529 S.W.2d 751 (Tex.1975); *Parker v. Highland Park, Inc.,* 565 S.W.2d 512 (Tex.1978).

We reverse and remand the judgment of the trial court.