CITY OF FARMERS BRANCH et
al., Petitioners,

v.

MATSUSHITA ELECTRIC CORPORA-
TION OF AMERICA, Respondent.

No. B–5551.

Supreme Court of Texas.

May 5, 1976.

Durant, Mankoff, Davis & Wolens, Ron-
ald M. Mankoff, Dallas, for petitioners.

Thompson, Knight, Simmons & Bullion,
Jerry L. Buchmeyer, Dallas, for respondent.

GREENHILL, Chief Justice.

This case involves an interpretation of
Section 10 of Article I of the Constitution
of the United States, which provides in part
that,

"No State shall, without the Consent of
Congress, lay any Imposts or Duties on
Imports or Exports  .  .  . "

The City of Farmers Branch assessed a nondiscriminatory ad valorem tax on merchandise stored in warehouses within its limits. In 1972, it assessed such a tax on the merchandise here in question. It had been imported from Japan and Puerto Rico and was the property of Matsushita Electrical Corporation of America, a wholly owned subsidiary of a Japanese corporation of a similar name.

The property had come to its destination in Farmers Branch, but was still in its original corrugated cartons. Matsushita declined to pay the tax. In this declaratory judgment suit, its contention is that the tax on its property is unconstitutional under the above provision of the Constitution of the United States.

■ Because of the earlier decision of the Supreme Court of the United States which this court is bound to respect, we at first upheld the position of Matsushita. The Court of Civil Appeals had held the property was not subject to taxation by the city, and we upheld that decision by refusing a writ of error with a notation, "no reversible error." 527 S.W.2d 768. Upon the same day upon which our court acted, January 14, 1976, the United States Supreme Court announced its decision in *Michelin Tire Corporation v. Wages*, 423 U.S. 276, 96 S.Ct. 535, 46 L.Ed.2d 495. We thereafter granted a writ error upon rehearing. It is our opinion that under Michelin, the tax of the City of Farmers Branch is not an unconstitutional tax. In the words of the *Michelin* decision, an " . . . assessment of a nondiscriminatory ad valorem property tax . . . is not within the constitutional prohibition against laying 'any Imposts or Duties on Imports . . .' "

The property which is the subject of the tax consists of Panasonic units and parts manufactured by or for Matsushita in Japan and Puerto Rico. The items were packed in sealed corrugated cartons and were shipped to the United States in sea vans. After the sea vans reached their port of entry, they were shipped by rail to Fort Worth. The seals on the sea vans were broken at Matsushita's warehouse in Farm-

ers Branch, and the individual cartons were there unloaded and stored. No manufacturing, repairing or servicing is carried on at the Matsushita warehouse. The warehouse is used only to store the merchandise until needed by retail dealers. The disputed items were all in their unopened corrugated cartons.

The "original package doctrine" had its origin in *Brown v. State of Maryland*, 25 U.S. 262, 6 L.Ed. 419 (1827), in which Chief Justice Marshall wrote:

"When the importer has so acted upon the thing imported that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive characteristic as an import, and has become subject to the taxing power of the state; *but while remaining the property of the importer, in his warehouse, in the original form or package in which it was imported, a tax upon it is too plainly a duty on imports to escape the prohibition in the constitution.*" [Emphasis supplied.]

*Brown v. Maryland* was enlarged upon in 1871 by *Low v. Austin,* 13 Wall. 29, 80 U.S. 29, 20 L.Ed. 517, which is characterized by the Supreme Court in *Michelin* as "the leading decision of the Court holding that the States are prohibited by the Import-Export clause from imposing a nondiscriminatory ad valorem property tax on imported goods until they lose their character as imports . . . "

In *Michelin,* however, the Supreme Court, upon its own initiative, carefully reviewed the *Brown* and the *Low v. Austin* decisions; and it concluded that, "*Low v. Austin* was wrongly decided. That decision therefore must be, and is, overruled."

■ We understand the holding of *Michelin* to be that where the tax is not upon the importation or movement of imported goods, and where the goods are no longer in transit, the goods are subject to the imposition of nondiscriminatory ad valorem property taxation by the states and their subdivisions.

We agree with the Supreme Court that there is no reason why an importer should not bear his share of the cost of services such as police and fire protection along with his competitors who handle only domestic goods. As the Supreme Court said in *Michelin,* the Import-Export clause " . . cannot be read to accord imported goods preferential treatment that permits escape from uniform taxes imposed without regard to foreign origin for services which the State supplies."

The ad valorem tax imposed by Farmers Branch is clearly nondiscriminatory and applicable to all such stored goods whether imported or not. The property of Matsushita is therefore subject to the tax.

■ In the alternative, Matsushita contends that because the Supreme Court changed the law in *Michelin* in 1976, that it should not be liable for taxes assessed for the year 1972 and beyond; i. e., that the *Michelin* decision should not be given retroactive effect, and that it should only be liable for taxes assessed after January 14, 1976, the date of the *Michelin* decision. We disagree for the following reasons.

First, the taxes assessed by Gwinnett County, Georgia, in the *Michelin* case were for the years 1972 and 1973, the same periods involved here. The Supreme Court upheld the judgment of the Supreme Court of Georgia that the taxes were valid, and at least by inference, that they were collectible. Michelin filed a motion for rehearing in the Supreme Court, and we were furnished with a copy of it. In the motion, Michelin limited its argument to the retroactive effect of the *Michelin* decision, and it urged the Supreme Court to declare its opinion to be prospective only because it had changed the law in effect for 100 years. The Supreme Court overruled Michelin's motion.

Second, Matsushita contends that it is inequitable to apply the *Michelin* decision and our decision as applying to taxes assessed in 1972 because under *Low v. Austin* and other decisions, Matsushita and others then considered their goods exempt from taxation. At the same time, however, Mat-

sushita was plainly informed and put upon notice by the City of Farmers Branch that the city considered that the goods were taxable, and that *Low v. Austin* and similar cases were wrongly decided and should be overruled. There is no basis for a contention that Matsushita relied on any previous action or non-action of the city because the city assessed the Matsushita property for taxes at its first opportunity.

And thirdly, the reasons for the collectibility of the nondiscriminatory tax as to Matsushita for the years in question are prominent in the *Michelin* decision. Matsushita's property during such period was afforded the same public services, including police and fire protection, as were afforded to their competitors and to others in the community; and there is no great inequity in their having to bear their same fair and equal share of such expense; i. e., the nondiscriminatory taxes assessed during such period.

The judgments of the trial court and the Court of Civil Appeals are reversed. The injunction issued by the trial court enjoining the assessment and collection of the taxes involved is dissolved; and judgment is here rendered that the merchandise in question was and is subject to the nondiscriminatory ad valorem personal property taxes.