Eugene and Angelica SANCHEZ et
al., Petitioners,

v.

Charles J. SCHINDLER et al.,
Respondents.

No. C–1087.

Supreme Court of Texas.

April 27, 1983.

Rehearing Denied June 15, 1983.

**250**

Edwards & Perry, Russell H. McMains, Guy H. Allison, Corpus Christi, for petitioners.

Meredith & Donnell, M.W. Meredith, Jr. and Ted B. Roberts, Corpus Christi, for respondents.

SPEARS, Justice.

Eugene and Angelica Sanchez brought this wrongful death action against Charles Schindler and his parents for the death of their minor son, Johnny Sanchez, arising from a collision between Johnny's motorcycle and Schindler's pick-up truck. The jury found for plaintiffs on the liability issues. On the damages issues, however, they found that Mr. and Mrs. Sanchez sustained no pecuniary loss, but awarded $102,500.00 in damages for the mental anguish suffered by Mrs. Sanchez. The trial court disregarded the jury's answers to the special issues on mental anguish. The court of appeals affirmed the trial court's denial of recovery for mental anguish. 626 S.W.2d 871. We reverse in part and render judgment for Sanchez for the damages found for mental anguish.

Johnny Sanchez, age fourteen, was severely injured in a motorcycle-pickup truck collision in Key Allegro, Texas in 1979. Paramedics treated him on the scene and transported him to Memorial Medical Center in Corpus Christi. His parents were at home at the time of the accident, and were told of the collision by a neighbor. At the hospital, they were prevented from seeing their son, but caught glimpses of his bloody legs through the doorway. He died several hours later.

Mr. and Mrs. Sanchez brought suit for the damages they sustained, individually and as heirs of Johnny Sanchez, against Charles J. Schindler, Jr., a minor, and Charles J. and Jean Schindler, his parents. The jury awarded $50,000 for the pain and suffering endured by Johnny Sanchez prior to his death, $7,187.41 for Johnny's medical treatment, $4,000 for funeral and burial expenses, and $450 for damages to his motorcycle. The jury found that Mr. and Mrs. Sanchez sustained no pecuniary loss resulting from their son's death; however, they awarded $102,500 damages for the mental anguish suffered by Mrs. Sanchez. Upon defendants' motion, the trial court disregarded the answers to the special issues on mental anguish. Angelica Sanchez has appealed, seeking the jury award of $102,500 for her injuries.

The seminal question presented is whether damages for mental anguish are recoverable under the Texas Wrongful Death Act for the death of a child. Tex.Rev.Civ.Stat. Ann. art. 4671. More specifically, we must determine whether Texas should continue to follow the pecuniary loss rule as the proper measure of damages for the death of a child.

In the past a surviving parent's damages in an action for the death of a child under the Texas Wrongful Death Act have been limited to the pecuniary value of the child's services and financial contributions, minus the cost of his care, support and education. The Texas statute does not expressly limit recovery to pecuniary loss. Tex.Rev.Civ. Stat.Ann. article 4671[1] creates a cause of action for "actual damages on account of the injuries causing the death . . . ." Article 4677 provides that "[t]he jury may give such damages as they may think proportionate to the injury resulting from such death." Like most states, Texas patterned its wrongful death statutes after Lord Campbell's Act. The Fatal Accident Act, 9 & 10 Vict., ch. 93 § 1 (1846). The English court ruled that Lord Campbell's Act limited recovery to pecuniary loss. *Blake v. Midway Railway Co.,* 118 Eng.Rep. 35 (Q.B. 1852). In *March v. Walker,* 48 Tex. 372, 375 (1877), this court held that since the language of the Texas Wrongful Death Act was based on Lord Campbell's Act, the measure of damages under the Texas statute would also be restricted to pecuniary loss.

■ Sanchez argues the pecuniary loss rule is based on an antiquated concept of the child as an economic asset, and should be rejected. We agree. It is time for this court to revise its interpretation of the Texas Wrongful Death statutes in light of present social realities and expand recovery beyond the antiquated and inequitable pecuniary loss rule. If the rule is literally followed, the average child would have a negative worth. *Selders v. Armentrout,* 190 Neb. 275, 207 N.W.2d 686, 688–89 (Neb. 1973); Ferguson, *Damages For the Death of a Minor Child Under the Texas Wrongful Death Act,* 4 St. Mary's L.J. 157, 160 (1972). Strict adherence to the pecuniary loss rule could lead to the negligent tortfeasor being rewarded for having saved the parents the cost and expense of rearing a child. The real loss sustained by a parent is not the loss of any financial benefit to be gained from the child, but is the loss of love, advice, comfort, companionship and society. *Fussner v. Andert,* 261 Minn. 347, 113 N.W.2d 355, 359 (Minn.1961); *Jones v. Carvell,* 641 P.2d 105, 108 (Utah 1982). We, therefore, reject the pecuniary loss limitation and allow a plaintiff to recover damages for loss of companionship and society and damages for mental anguish for the death of his or her child.[2] In this case, Mrs. Sanchez pleaded for the recovery of damages for mental anguish, and the jury awarded her $102,500 pursuant to the special issues on mental anguish. She has preserved her argument on appeal to this court.

■ Schindler argues that the responsibility of changing the recovery under the Wrongful Death statute belongs to the Tex-

1. All statutory references are to Texas Revised Civil Statutes Annotated.

2. We overrule the following cases to the extent that they conflict with our present holding: *J.A. Robinson Sons, Inc. v. Wigart,* 431 S.W.2d 327, 334–35 (Tex.1968); *Tex-Jersey Oil Corp. v. Beck,* 157 Tex. 541, 549, 305 S.W.2d 162, 169 (1957); *Smith v. Farrington,* 117 Tex. 459, 463, 6 S.W.2d 736, 737 (1928); *Francis v. Atchison, Topeka & Santa Fe Railway Co.,* 113 Tex. 202, 209, 253 S.W. 819, 822 (1923); *Gulf, Colorado & Santa Fe Railway Co. v. Farmer,* 102 Tex. 235, 239, 115 S.W. 260, 261 (1909); *International & Great Northern Railroad Co. v. McVey,* 99 Tex. 28, 32, 87 S.W. 328, 329 (1905); *Merchants' & Planters' Oil Co. v. Burns,* 96 Tex. 573, 581, 74 S.W. 758, 761 (1903); *Galveston, Harrisburg & San Antonio Railway Co. v. Worthy,* 87 Tex. 459, 465, 29 S.W. 376 (1895); *San Antonio & Arkansas Pass Railway Co. v. Long,* 87 Tex. 148, 156, 27 S.W. 113, 116 (1894); *McGown v. International & Great Northern Railroad Co.,* 85 Tex. 289, 293, 20 S.W. 80, 81 (1892); *Taylor, Bastrop & Houston Railway Co. v. Warner,* 84 Tex. 122, 125, 19 S.W. 449, 450 (1892); *Houston City Street-Railway Co. v. Sciacca,* 80 Tex. 350, 355, 16 S.W. 31, 33 (1891); *St. Louis, Arkansas & Texas Railroad Co. v. Johnson,* 78 Tex. 536, 542, 15 S.W. 104, 106 (1890); *Missouri Pacific Railway Co. v. Lehmberg,* 75 Tex. 61, 67, 12 S.W. 838, 840 (1889); *Missouri Pacific Railway Co. v. Henry,* 75 Tex. 220, 224, 12 S.W. 828, 829 (1889); *Brunswig v. White,* 70 Tex. 504, 8 S.W. 85 (1888); *City of Galveston v. Barbour,* 62 Tex. 172, 174 (1884); *International & Great Northern Railroad Co. v. Kindred,* 57 Tex. 491, 498 (1882); *Houston & Texas Central Railway Co. v. Cowser,* 57 Tex. 293, 303 (1881); *March v. Walker,* 48 Tex. 372, 375 (1877).

as Legislature. This court originally imposed the pecuniary loss rule as a limitation of the damages recoverable under the Texas Wrongful Death Act. *March v. Walker,* 48 Tex. 372, 375 (1877). It is, therefore, logical for this court to now act in response to the needs of a modern society, and abolish the antiquated rule in favor of recovery of loss of society and mental anguish.

■ This court has always endeavored to interpret the laws of Texas to avoid inequity. As a result, the court has abolished other antiquated doctrines. *See, e.g., Parker v. Highland Park, Inc.,* 565 S.W.2d 512, 514 (Tex.1978) (abolished no-duty rule); *Davila v. Sanders,* 557 S.W.2d 770, 771 (Tex. 1977) (per curiam) (doctrine of imminent peril abolished); *Farley v. M & M Cattle Co.,* 529 S.W.2d 751, 758 (Tex.1975) (abolished doctrine of assumption of the risk).

■ The legislature has attempted to amend the Texas Wrongful Death Act to allow damages for loss of society and mental anguish; however, none of the bills have passed. This court should not be bound by the prior legislative inaction in an area like tort law which has traditionally been developed primarily through the judicial process. Green, *Protection of the Family Under Tort Law,* 10 Hastings L.J. 237, 245 (1959). In his article, Dean Green stated that because the difficulties in reducing the refinements of tort law doctrines into statutory form often result in legislation which is either underinclusive or overbroad and which is frequently couched in ambiguous terms which the court must interpret, judicial decision is the best way to develop tort law. *Id.* at 246. Inaction of the legislature cannot be interpreted as prohibiting judicial reappraisal of the judicially created pecuni-

ary loss rule. *Bedgood v. Madelin,* 600 S.W.2d 773, 780 (Tex.1980) (Spears, J., concurring). "[A] legislature legislates by legislating, not by doing nothing, not by keeping silent." *Wycko v. Gnodtke,* 361 Mich. 331, 105 N.W.2d 118, 121–22 (Mich.1960).

■ This court has recognized previously that injuries to the familial relationship are significant injuries and are worthy of compensation. In *Whittlesey v. Miller,* 572 S.W.2d 665, 668 (Tex.1978), we held that either spouse has a cause of action for loss of consortium suffered as a result of an injury to the other spouse by a tortfeasor's negligence. We held that loss of affection, solace, comfort, companionship, society, assistance, and sexual relations were real, direct, and personal losses and said that these losses were not too intangible or conjectural to be measured in pecuniary terms. *Id.* at 667. A parent's claim for damages for the loss of companionship of a child is closely analogous to the loss of consortium cause of action created in *Whittlesey.* In *Selders v. Armentrout,* 190 Neb. 275, 207 N.W.2d 686, 689 (Neb.1973), the Nebraska Supreme Court noted this analogy with loss of consortium and said, "There is no logical reason for treating an injury to the family relationship resulting from the wrongful death of a child more restrictively."

Either by statute or judicial decision, thirty-five states allow recovery for loss of companionship and society in a wrongful death action brought by the parents. Presently, fourteen jurisdictions allow recovery for damages for loss of companionship and society under statutes containing language which traditionally had been interpreted as limiting recovery to pecuniary loss.[3] Twen-

3. Arizona: *City of Tucson v. Wondergem,* 105 Ariz. 429, 466 P.2d 383, 386 (Ariz.1970); California: *Krouse v. Graham,* 19 Cal.3d 59, 137 Cal.Rptr. 863, 562 P.2d 1022, 1025 (1977); Idaho: *Volk v. Baldazo,* 103 Idaho 570, 651 P.2d 11, 14 (Idaho 1982); Illinois: *Elliott v. Willis,* 89 Ill.App.3d 1144, 45 Ill.Dec. 287, 412 N.E.2d 638, 641 (Ill.App.1980); Indiana: *American Car Loading Corp. v. Gary Trust & Savings Bank,* 216 Ind. 649, 25 N.E.2d 777, 782 (Ind.1940); Louisiana: *Marceleno v. State Dept. of Highways,* 367 So.2d 882, 889 (La.App.1978); Min-

nesota: *Fussner v. Andert,* 261 Minn. 347, 113 N.W.2d 355, 359 (Minn.1961); Mississippi: *Bouroughs v. Oliver,* 226 Miss. 609, 85 So.2d 191, 193 (Miss.1956); Montana: *Swanson v. Champion International Corp.,* 646 P.2d 1166, 1170 (Mont.1981); Nebraska: *Garwin v. Coover,* 202 Neb. 582, 276 N.W.2d 225, 227 (Neb. 1979); New Jersey: *Green v. Bittner,* 85 N.J. 1, 424 A.2d 210, 215 (N.J.1980); South Carolina: *Nance v. State Board of Education,* 282 S.W.2d 848, 849 (S.C.1981); South Dakota: *Anderson v. Lele,* 88 S.D. 11, 216 N.W.2d 152 (S.D.1974);

ty one states recognize recovery for loss of society and companionship by statute.[4] Nine of these statutes were amended to include these elements after their existing statutes were judicially interpreted to include society and companionship.[5]

Commentators are virtually unanimous in their criticism of the pecuniary loss limitation and advocate recovery for nonpecuniary losses. *See, e.g.,* 2 F. Harper & F. James, The Law of Torts § 25.14, at 1331 (1956); W. Prosser, The Law of Torts § 127, at 908–09 (4th ed. 1971); Decof, *Damages In Actions For Wrongful Death of Children,* 47 Notre Dame Law, 197, 198 (1971); Speiser & Malawer, *An American Tragedy: Damages For Mental Anguish of Bereaved Relatives In Wrongful Death Actions,* 51 Tul.L.Rev. 1, 5–6 (1976); Strong & Jacobsen, *Such Damages As Are Just: A Proposal For More Realistic Compensation In Wrongful Death Cases,* 43 Mont.L.Rev. 55 (1982).

The jurisdictions that do not limit recovery to pecuniary loss realize that damages for loss of companionship and society of a child are not too uncertain to be measured in pecuniary terms in an attempt to redress the actual loss which a parent suffers. These elements of damage are not too speculative to be given a monetary value. Recovery is allowed in other tort areas for injuries which are equally intangible; *e.g.,* pain and suffering. The fear of excessive verdicts is not a sufficient justification for denying recovery for loss of companionship.

The judicial system has adequate safeguards to prevent recovery of damages based on sympathy or prejudice rather than fair and just compensation for the plaintiff's injuries.

■ A parent's recovery under the wrongful death statute includes the mental anguish suffered as a result of the child's wrongful death. The destruction of the parent-child relationship results in mental anguish, and it would be unrealistic to separate injury to the familial relationship from emotional injury. *Wilson v. Lund,* 80 Wash.2d 91, 491 P.2d 1287, 1292 (Wash. 1971) (en banc). Injuries resulting from mental anguish may actually be less nebulous than pain and suffering, or injuries resulting from loss of companionship and consortium. A plaintiff should be permitted to prove the damages resulting from a tortfeasor's negligent infliction of emotional trauma. *Leong v. Takasaki,* 55 Hawaii 398, 520 P.2d 758, 767 (Hawaii 1974). This includes recovery for mental anguish.

■ In this case Mrs. Sanchez proved she is suffering from traumatic depressive neurosis. She presented testimony that she is despondent and disoriented, has been forced to seek medical attention for her neurosis and has frequent neck and shoulder pains and headaches. Mrs. Sanchez has proved that she suffered mental anguish, and therefore, is entitled to recover the

Utah: *Jones v. Carvell,* 641 P.2d 105, 108 (Utah 1982).

**4.** Ark.Stat.Ann. § 27–909 (1979); Fla.Stat.Ann. § 768.21 (Supp.1981); Hawaii Rev.Stat. § 663–3 (1976); Iowa Code Ann. § 633–336 (Supp.1982); Kan.Stat.Ann. § 60–1904 (1976); Ky.Rev.Stat.Ann. § 411.135 (1972); Me.Rev. Stat.Ann. tit. 18–A § 2–804 (Supp.1982); Md. Cts. & Jud.Proc.Code Ann. § 3–904(d) (1980); Mass.Ann. Laws ch. 229 § 1 (Michie/Law Co-Op 1982); Mich.Comp. Laws Ann. § 600.2922 (Supp.1982); Mo.Ann.Stat. § 537.090 (Supp. 1982); Nev.Rev.Stat. § 41.090 (1979); N.C. Gen.Stat. § 28.174 (Supp.1982); Okla.Stat.Ann. tit. 12 § 1055 (West 1981); Or.Rev.Stat. § 30.-020 (1981); Vt.Stat.Ann. tit. 14 § 1492(b) (Supp.1982); Va.Code § 8.01–52 (Supp.1982); Wash.Rev.Code Ann. § 424.010 (1981); W.Va. Code § 55–7–6 (Supp.1982); Wis.Stat.Ann.

§ 895.05 (West Supp.1982); Wyo.Stat. § 1–38–102 (Supp.1982).

**5.** Arkansas: *Vines v. Arkansas Power & Light,* 232 Ark. 173, 337 S.W.2d 722, 724 (Ark.1960); Florida: *Lithgow v. Hamilton,* 69 So.2d 776, 778 (Fla.1954); Hawaii: *Ginozo v. Takai,* 40 Hawaii 691 (1955); Iowa: *Wardlow v. City of Keokuk,* 190 N.W.2d 439, 448 (Iowa 1971); Michigan: *Wycko v. Gnodtke,* 361 Mich. 331, 105 N.W.2d 118, 122 (Mich.1960); Virginia: *Matthews v. Hicks,* 197 Va. 112, 87 S.E.2d 629, 633 (Va.1955); Washington: *Lockhart v. Besel,* 71 Wash.2d 112, 426 P.2d 605, 608 (Wash. 1967); West Virginia: *Black v. Peerless Elite Laundry Co.,* 113 W.Va. 828, 169 S.E. 447, 449 (W.Va.1933); Wyoming: *McPike v. Scheuerman,* 398 P.2d 71, 71 (Wyo.1965).

$102,500 awarded to her by the jury for her mental anguish.[6]

Presently, the courts of several states allow recovery for mental anguish under statutes similar to Texas' statute. *See, e.g., City of Tucson v. Wondergem,* 105 Ariz. 429, 466 P.2d 383, 386 (Ariz.1970); *Nance v. State Board of Education,* 277 S.C. 64, 282 S.E.2d 848, 849 (S.C.1981); *Wilson v. Lund,* 80 Wash.2d 91, 491 P.2d 1287 (Wash.1971).[7] In *City of Tucson v. Wondergem,* 466 P.2d at 388, the Arizona Supreme Court allowed a plaintiff to recover for mental anguish in a wrongful death action under a statute which provided "the jury shall give such damages as it deems fair and just with reference to the injury resulting from the death . . . ." The Arizona court found the denial of recovery for mental anguish deprived the survivor of material damages "resulting from the death." *Id.* 466 P.2d at 386. The court noted that the Arizona Wrongful Death Act had already been interpreted to allow recovery for loss of companionship and comfort and said that these losses result in mental anguish. *Id.* 466 P.2d at 386.

 It is within our discretion to determine whether our reinterpretation of damages under the Wrongful Death Act will be given prospective or retrospective application. *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Great Northern Railway Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932). The general rule is that a decision of a supreme court is to be retrospective in its operation. *Storrie v. Cortes,* 90 Tex. 283, 38 S.W. 154 (1896). However, exceptions are recognized when considerations of fairness and policy preclude full retroactivity. Resolution of the issue turns primarily on the extent of public reliance on the former rule and the ability to foresee a coming change in the law. *See*

*In Re S/S Helena,* 529 F.2d 744, 754 (5th Cir.1976); *City of Farmers Branch v. Matushita Electric Corp.,* 537 S.W.2d 452, 454 (Tex.1976). In wrongful death cases it seems very unlikely that the negligent party would be influenced by the earlier interpretation of damages. Therefore, our holding that a plaintiff may recover under the Wrongful Death Statute for loss of society and companionship and damages for mental anguish for the death of his or her minor child applies to all future causes as well as those still in the judicial process. *See Downs v. J.M. Huber Corp.,* 580 F.2d 794, 797 (5th Cir.1978) (held decision in *Parker v. Highland Park Inc.,* 565 S.W.2d 512 (Tex. 1978) was applicable to case tried and on appeal on date of decision); *Taggert v. Taggert,* 552 S.W.2d 422, 423 (Tex.1977) (decision in *Cleary v. Cleary,* 544 S.W.2d 661 (Tex.1976) applied to case on appeal at time of *Cleary*); *Felderhoff v. Felderhoff,* 473 S.W.2d 928, 933 (Tex.1971) (decision applied to causes of action arising since the accident in the case).

We, therefore, reverse the judgment of the court of appeals, and render judgment that Mrs. Angelica Sanchez recover $102,-500 for the mental anguish she suffered as a result of her son's death in addition to the other damages awarded by the jury which have not been appealed.

POPE, C.J., dissents in an opinion in which McGEE and BARROW, JJ., join.

POPE, Chief Justice, dissenting.

I respectfully dissent because I believe the court should not overturn its long-standing decisions and reinterpret the Texas Wrongful Death Statute to authorize recovery for mental anguish. In 1877, this court ruled that since the Texas Wrongful Death Statute was borrowed from Lord Campbell's Act, the measure of damages

---

**6.** Under the Wrongful Death Act there is no requirement that the plaintiff be within the zone of danger or have witnessed the accident in order to recover for mental anguish.

**7.** Additionally, eight states allow recovery for mental anguish by statute. Ark.Stat.Ann. § 27.909 (1979); Fla.Stat.Ann. § 768.21 (Supp.

1981); Kan.Stat.Ann. § 60–1904 (1976); Md. Cts. & Jud.Proc.Code Ann. § 3–904(d) (1980); Nev.Rev.Stat. § 41.090 (1979); Okla.Stat.Ann. tit. 12 § 1053 (West 1981); Va.Code § 8.01–52 (Supp.1982); W.Va.Code § 55–7–6 (Supp. 1982).

under the Texas statute was the same as the English act—pecuniary loss only. *March v. Walker,* 48 Tex. 372, 375 (1877). Texas courts have consistently followed the pecuniary loss rule. *E.g., J.A. Robinson Sons, Inc. v. Wigart,* 431 S.W.2d 327 (Tex. 1968); *International & G.N. Ry. v. McVey,* 99 Tex. 28, 87 S.W. 328 (1905).

The majority reverses this well-established rule. If we were dealing with the common law rather than the statute, I might be persuaded by the majority's reasoning. There is strong evidence, however, that the Texas Legislature intended to limit recovery to pecuniary losses when it enacted the Texas Wrongful Death Statute. The Texas statute was patterned after the English statute. Both statutes provided that "the jury may give such damages as they may think proportioned to the injury resulting from such death ..." The Fatal Accident Act, 9 & 10 Vict., ch. 93, § 2 (1846); 1860 Tex.Gen.Laws, ch. 35, at 32, 4 H. Gammel, Laws of Texas 1394 (1898). When the Texas Legislature adopted the statute in 1860, the English statute and every American statute patterned after it had already been interpreted to limit recovery to pecuniary losses. *See* G. Field, The Law of Damages § 630 (1878). The majority does not dispute that the Texas Legislature at the inception of the statute intended to apply the pecuniary loss rule to the Texas statute. The continued use of the same language for more than a century while the courts have time and again consistently held that mental anguish may not be recovered shows that the courts' construction is in accord with the legislature's intent. E. Crawford, Construction of Statutes, § 224 (1940).

There are times when we have properly stuffed new meaning into old words of some statute. We should proceed modestly,

however, when the Texas Legislature has addressed the provisions of this specific statute many times since we handed down *March v. Walker,* 48 Tex. 372 (1877). The Texas Wrongful Death Statute has been codified and recodified on four occasions [1] since our decision in *March.* Article 4671 of the act, which authorizes the cause of action, has been amended five times.[2] The Sixty-Third Legislature addressed the specific matter of damages under the statute and enacted article 4675a to permit proof of remarriage of the surviving spouse as evidence of reduced damages. *See Exxon Corp. v. Brecheen,* 526 S.W.2d 519, 525 (Tex. 1975). Four bills introduced in the Sixty-Sixth Legislature [3] and three bills introduced in the Sixty-Seventh Legislature [4] would have expanded recovery to include mental anguish. None of these bills passed. This summary of legislative consideration of damages under the Texas Wrongful Death Statute shows that the legislature has accepted some and rejected other proposals to change decisions about damages under the statute.

The Texas Legislature now has under consideration Senate Bill 30 and House Bills 255 and 800. Those bills, if enacted, would permit parents to recover damages for mental anguish, loss of society, and loss of companionship resulting from the death of a child. House Bill 800 has been reported favorably from a House committee. While the majority may be impatient with what they consider a less desirable statutory policy, I would adhere to settled principles of statutory construction. There is, for example, a presumption that the legislature acts "with full knowledge of all decisions on the subject matter of the legislation rendered before its enactment." *Craft v. Craft,* 579 S.W.2d 506, 508 (Tex.Civ.App.—Dallas), *writ ref'd per curiam,* 580 S.W.2d 814 (Tex. 1979).

---

1. Tex.Rev.Civ.Stat. arts. 4671–4678 (1925); Tex.Rev.Civ.Stat. arts. 4694–4704 (1911); Tex. Rev.Civ.Stat. arts. 3017–27 (1895); Tex.Civ. Stat. arts. 2899–2909 (1879).

2. 1975 Tex.Gen.Laws, ch. 530, at 1381; 1921 Tex.Gen.Laws, ch. 109, at 212; 1913 Tex.Gen. Laws, ch. 143, at 288; 1892 Tex.Gen.Laws, ch. 7, at 5, 10 H. Gammel, Laws of Texas 369

(1898); 1887 Tex.Gen.Laws, ch. 62, at 44, 9 H. Gammel, Laws of Texas 842 (1898).

3. S.B. 207, H.B. 175, H.B. 597, and H.B. 965, 66th Leg., Reg.Sess. (1979).

4. S.B. 1170, H.B. 163, and H.B. 1458, 67th Leg., Reg.Sess. (1981).

The Texas Wrongful Death Statute created a right that did not exist at common law. We are now dealing with that statute—not the common law. The force of prior judicial construction of statutes has been expressed by this court in a number of thoughtful opinions. *Marmon v. Mustang Aviation, Inc.,* 430 S.W.2d 182 (Tex.1968); *Moss v. Gibbs,* 370 S.W.2d 452, 458 (Tex. 1963). *See* 20 Am.Jur.2d, *Courts,* § 198 (1965). In *Cunningham v. Cunningham,* 120 Tex. 491, 40 S.W.2d 46, 51 (1931), we announced a principle of statutory construction that we have respected:

> Nothing is better settled than that the Legislature must be regarded as intending statutes, when repeatedly re-enacted, as is the case here, to be given that interpretation which has been settled by the courts. *Love v. Wilcox* (Tex.Sup.) [119 Tex. 256] 28 S.W.2d 515, 524; *Pearson v. West,* 97 Tex. [238] 239, 77 S.W. 944.

Upon these principles this court refused to overturn a long-standing interpretation that the Texas Wrongful Death Statute did not have extra-territorial force. *Marmon v. Mustang Aviation, Inc.,* 430 S.W.2d 182 (Tex.1968). In *Marmon,* the petitioner argued that the doctrine that the state had no power to give extra-territorial effect had become outmoded by force of the most significant contacts doctrine. This court, while accepting the doctrine in other contexts, rejected that approach, saying:

> If this proposition be accepted as sound, it does not necessarily follow that we should now hold that Article 4671 has extra-territorial thrust. It would be far-reaching, to say the least, for us to say that an enactment of the Legislature adopted over a hundred years ago now has a different meaning and a more far-reaching thrust than it did when construed by this court in 1884.

*Id.* at 185–86. The legislature subsequently amended the statute to give it extra-territorial force. 1975 Tex.Gen.Laws, ch. 530, § 2, at 1382; Tex.Rev.Civ.Stat.Ann. art. 4678.

The majority announces a novel rule of statutory construction. It first appeared in the jurisprudence of Texas in a concurring opinion three years ago. *Bedgood v. Madalin,* 600 S.W.2d 773 (Tex.1980) (Spears, J., concurring). That new rule is that a legislature's inaction is a signal that courts are free to move into legislative policy matters. The majority opinion states that legislative inaction should no longer thwart what they consider a better policy. It then imposes that policy judicially.

This rule assumes that repeated unfruitful efforts to amend the Texas Wrongful Death Statute concerning damages are proof of inaction. The legislature has in fact often acted. An effective way of defeating a weak or bad bill is to avoid voting on it. The legislature's refusal to vote on the many proposals to change the measure of damages is an opinion of that branch of government that there is no pressing need to change the present law. Legislatures act affirmatively and negatively; but in either instance, the legislative will is expressed. For us to ignore defeated legislation is as misleading as it would be for a court to reject from our common law decisions those cases which hold for the defendant. *See* 2 A. Sutherland, Statutory Construction, § 45.10 (4th ed. 1973). When we refuse the claims of plaintiffs and hold for defendants, we are still handing down legal opinions and guidelines, just as the legislature makes a statement of its intent by defeating legislation.

The judiciary should exercise caution before substituting its subjective notions for legislative materials. The new rule authorizes judicial resolution of policy matters of great public import without benefit of or compliance with ordinary checks and balances, open meetings limitations, public hearings, democratic legislative debate, a bicameral consideration, an executive veto, or other legislative safeguards. It is one thing for a court to decide that an interpretation of a statute is erroneous; it is quite another and more serious matter for a court to decide that a statute is unwise. I would respect the separation of powers and exercise judicial restraint before entering a poli-

cy field where our judgment is at best a minority subjective decision.[5]

A second reading of the majority opinion shows that the many cases cited in support of its proposed new rule relate to loss of society, which is not here involved. It is not until we reach the penultimate paragraph of the majority opinion that we are told that the majority's new rule is actually supported only by "several states." According to the majority, three states allow recovery for mental anguish under statutes similar to Texas' statute: Arizona, South Carolina, and Washington.

The Washington Supreme Court quite properly applied the Washington Legislature's 1967 amended statute that provided for a parent's recovery. *Wilson v. Lund*, 80 Wash.2d 91, 491 P.2d 1287 (1971). We do not have a statute, as Washington does, that says:

> damages may be recovered for the loss of love and companionship of the child and for injury to or destruction of the parent-child relationship . . .

Wash.Rev.Code § 4.24.010. The Arizona Supreme Court abandoned the pecuniary loss rule as a result of a 1956 amendment which authorized

> such damages as it [the jury] deems fair and just with reference to the injury resulting from the death to the surviving

parties who may be entitled to recover . . .

Ariz.Rev.Stat.Ann. § 12–613. *See Boise v. Cole*, 99 Ariz. 198, 407 P.2d 917, 920 (1965). The South Carolina Supreme Court has always construed its statute to permit mental anguish damages. *See Norhden v. Northeastern Railroad Co.*, 59 S.C. 87, 87 S.E. 228, 239 (1900). The important distinction is that none of these courts had to overturn an established statutory construction. The majority does not cite a single case in which a court has authorized damages for mental anguish by overruling a longstanding statutory construction that has been ratified by legislative re-enactment of the existing statute and ratified by legislative rejection of amendments authorizing mental anguish damages. Yet that is what the majority does today.

Other states that have achieved the result sought by the majority have waited until the statutory policy was changed by the legislature's amendment of the statute. A minority of eleven jurisdictions permit recovery for mental anguish, and ten of those jurisdictions declared their policy by amending their statutes.[6] The majority can muster no substantial precedent for its in-house change of legislative policy.

The majority opinion does not clearly delineate the proof required to recover its newly created damages for mental anguish.

---

5. If the Congress or a state legislature has passed an inadequate statute, why should it not be revised by judicial construction? If the statute is one that is manifestly unwise, harsh or out-of-date, why should it not be abrogated by the exercise of the power of judicial review? . . .

 The objections to such alluring but deceptive plausibilities are more deep-seated than might appear at first blush. For in the end what would eventuate would be a substantial transfer of legislative power to the courts. A function more ill-suited to judges can hardly be imagined, situated as they are, and should be, aloof from the political arena and beholden to no one for their conscientious conduct. Such a course would also denigrate the legislative process, since it would tend to relieve legislators from having to account to the electorate. The outcome would inevitably be a lessening, on the one hand, of judicial independence and, on the other, of legislative responsibility, thus polluting the blood

stream of our system of government. We should be on guard against any such deliberate or unwitting folly.

Justice John M. Harlan, *Thoughts at a Dedication: Keeping the Judicial Function in Balance*, 49 A.B.A.J. 943, 944 (1963).

6. Ariz.Rev.Stat.Ann. § 12–613 (fair and just damages with reference to the injury to the surviving parties); Ark.Stat.Ann. § 27.909 (mental anguish); Fla.Stat.Ann. § 768.21 (mental pain and suffering); Kan.Stat.Ann. § 60–1904 (mental anguish, suffering, or bereavement); Md.Cts. & Jud.Proc.Code Ann. § 3–904(d) (mental anguish, emotional pain and suffering); Nev.Rev.Stat. § 41.090 (grief or sorrow); Okla.Stat.Ann. title 12 § 1053 (grief); Va.Code § 8.01–52 (sorrow, mental anguish, and solace); Wash.Rev.Code § 4.24.010 (injury to or destruction of the parent-child relationship); W.Va.Code § 55–7–6 (sorrow, mental anguish, and solace).

Some of the language in the opinion suggests that any mental anguish, however slight, is compensable. The established threshold for recovering mental anguish damages requires proof of willful tort, gross negligence, willful and wanton disregard, or physical injury resulting from the mental anguish. This threshold is universally applied in the common law and statutory law of this state. *E.g., Farmers & Merchants State Bank of Krum v. Ferguson,* 617 S.W.2d 918, 921 (Tex.1981) (Uniform Commercial Code); *Duncan v. Luke Johnson Ford, Inc.,* 603 S.W.2d 777, 779 (Tex.1980) (deceptive trade practices); *Billings v. Atkinson,* 489 S.W.2d 858, 861 (Tex.1973) (invasion of privacy); *Fisher v. Carrousel Motor Hotel, Inc.,* 424 S.W.2d 627, 630 (Tex. 1967) (assault and battery).

The Texas Deceptive Trade Practices Act, like the Texas Wrongful Death Statute, authorizes the recovery of "actual damages." Tex.Bus. & Com.Code Ann. § 17.-50(b)(1); Tex.Rev.Civ.Stat.Ann. art. 4671. We have repeatedly held that "actual damages" under the Deceptive Trade Practices Act means those damages recoverable at common law and that damages for mental anguish require proof of physical injury or conduct worse than negligence. *Speier v. Webster College,* 616 S.W.2d 617, 618 (Tex. 1981), *aff'g in part,* 605 S.W.2d 712, 713–14 (Tex.Civ.App.—Eastland 1980); *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 939 (Tex.1980). In this case, Mrs. Sanchez has satisfied the threshold for recovering mental anguish damages by proving a resulting physical injury. In future cases, we should continue to adhere to the universally established standard for mental anguish damages.

The decisions of this court have made the Wrongful Death Statute certain, and to that extent our decisions are a part of the statute. To change our decisions is to change the statute when the evidence is that the legislature has not seen any need to make the change. For this court to do so is to intrude upon the legislative policy arena. Horack, Jr., *Congressional Silence: A Tool of Judicial Supremacy,* 25 Tex.L.Rev. 247, 261 (1947).

I would affirm the judgments of the courts below.

McGEE and BARROW, JJ., join in this dissenting opinion.

RAY, Justice, concurring.

## ON MOTION FOR REHEARING

I concur with the majority in overruling the Schindlers' motion for rehearing. I further concur with the majority of the Court in rejecting the pecuniary loss limitation in actions for the wrongful death of a child. In doing so, we join the modern trend in allowing recovery for loss of companionship, society, emotional support, love and felicity.

The opinion speaks only to recovery by a parent for the death of a *minor* child. Legal symmetry mandates that the class of beneficiaries affected by this decision not be limited to parents of minor children. The majority has aptly noted that "injuries to the familial relationship are significant injuries and are worthy of compensation." In future cases brought under the Texas Wrongful Death Act, I would permit recovery for the social losses and emotional injuries inflicted upon any beneficiary designated by statute. Tex.Rev.Civ.Stat.Ann. art. 4675.

We have permitted Mrs. Sanchez to recover damages for mental anguish, recognizing that "[a] plaintiff should be permitted to prove the damage resulting from a tortfeasor's negligent infliction of emotional trauma." Mrs. Sanchez introduced evidence that she is suffering from traumatic depressive neurosis and as a result must seek medical care for physical pains associated with her neurosis. While the majority opinion does not address the issue, I do not believe that proof of such physical manifestations should be a necessary predicate for recovery for mental anguish. *Connell v. Steel Haulers, Inc.,* 455 F.2d 688, 691 (8th Cir.1972).

Mr. Chief Justice Pope, in his dissent to the majority opinion, states that "[s]ome of that language in the opinion suggests that any mental anguish, however slight, is compensable." While I agree with his observa-

tion, I disagree with his objection. The focus should be on compensating the bereaved for their harrowing experience resulting from the untimely, preventable and otherwise unnecessary death of one with whom they have shared a special emotional relationship. *See* 1 Speiser, *Recovery for Wrongful Death 2d,* § 3:52. To this extent, I would overrule such cases as *Speier v. Webster College,* 616 S.W.2d 617, 618 (Tex. 1981); *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 939 (Tex.1980); and *Harned v. E–Z Finance Co.,* 151 Tex. 641, 254 S.W.2d 81 (1953). Justice and public policy should permit an award for the grief, sorrow and mental distress suffered by a decedent's survivors. *See Scoville v. Missouri Pacific Railroad Co.,* 458 F.2d 639, 649 (8th Cir.1972); *Connell v. Steel Haulers, Inc.,* 455 F.2d at 691; *see also,* 1 & 2 Speiser, *supra,* §§ 3:53, 15:11.

The concurring opinion in *Bedgood v. Madalin,* 600 S.W.2d 773, 776–80 (Tex.1980) (Spears, J.), was the harbinger of the present majority opinion. Mr. Justice Spears concluded his concurrence by stating: "It is time for Texas to take this step into the 20th Century." The majority has initiated that step; we should now complete the evolution.

KILGARLIN, J., joins in this concurring opinion.