**James SIMMONS, et ux. Julia Simmons Survivor of Pamela Sue, Appellants,**

v.

**Paula Jo JACKSON, Appellee.**

**No. 2–82–151–CV.**

Court of Appeals of Texas,
Fort Worth.

June 9, 1983.

Rehearing Denied July 14, 1983.

Norman Darwin, Norman Darwin & Associates, Fort Worth, for appellants.

Charles M. Bradshaw, Dallas, for appellee.

Before HUGHES, JORDAN and BURDOCK, JJ.

## OPINION

JORDAN, Justice.

This appeal is from a take nothing judgment rendered by the trial court on a jury verdict in a wrongful death action brought against appellee herein for the death of appellant's seventeen year old daughter, Pamela Sue Simmons. Her death resulted from a one car accident in Tarrant County on August 28, 1980.

We reverse and remand.

On August 28, 1980, the deceased, Pamela Sue Simmons, was riding as a passenger in a 1971 Ford LTD automobile driven by appellee, Paula Jo Jackson, on Malaga Drive in the community of Lake Worth, Tarrant County, Texas. While maneuvering a long, gradual curve to the right, the automobile driven by appellee left the roadway, went 144 feet, hit a bush and overturned. Pamela Sue Simmons was thrown from the car during this time and the car turned over at least once, landing on top of her. She was apparently killed instantly and there was no evidence of any conscious pain and suffering.

The parents of Pamela Sue, appellants herein, brought this action to recover the economic losses incurred by the death of their child and for the grief, sorrow, loss of love, society and comfort sustained by them to the extent that their mental health had been damaged.

During the trial, the trial court, in accordance with the law at the time this case was tried, excluded from the jury's consideration any evidence of grief, sorrow, loss of love, society and comfort or damage to the mental health of the parents. This evidence was preserved by a bill of exceptions taken by appellants.

The trial court submitted questions to the jury which asked if Paula Jo Jackson was negligent in her speed, in the application of her brakes, in her lookout, or in her failure to keep her automobile completely upon the roadway of Malaga Drive. The jury answered no to each of these questions, and additionally found that appellants had suffered no pecuniary loss as a result of the death of their daughter.

We are asked in this appeal to set aside this jury verdict on the grounds that as a matter of law the evidence established some negligence on the part of appellee, or in the alternative that the jury's findings of no negligence were so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. This requires a rather detailed review of the evidence found in this record.

■ At the outset, we recognize that both trial and appellate courts must be very cautious and slow in overturning a jury verdict in any case. Under our system of jurisprudence the jury is the finder of fact and is the one who views the witnesses, determines their credibility, and decides what the true facts are. Ordinarily, if the jury verdict is supported by sufficient evidence of probative force, it must stand. We cannot substitute our opinion for that of the jury and decide for ourselves what the facts are in any given case.

■ On the other hand, this court, as any appellate court, does have the authority, and in fact the duty, to carefully review all of the evidence in any case, and if the jury's findings and verdict are so against the great weight and preponderance of the evidence as to shock the conscience, or are manifestly wrong and unjust, to set aside the jury verdict and order whatever action is necessary under the circumstances. We think this is a case where we must do just that. *See Burns v. Union Standard Ins. Co.,* 580 S.W.2d 650 (Tex.Civ.App.—Fort Worth 1979, writ aff'd 593 S.W.2d 309 (1979), no writ); *Hammond v. Stricklen,* 498 S.W.2d 356 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.).

In their first two points of error, appellants contend that the trial court erred in rendering judgment on the jury verdict because the evidence proved, as a matter of law, that appellee was negligent in the operation of her automobile, or, in the alterna-

tive, that the finding of no negligence was so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. We sustain these two points of error.

On the evening of August 28, 1980, Pamela Sue Simmons and Paula Jo Jackson, after attending a high school pep rally, drove, in the 1971 LTD owned by Paula Jo's father, to the Pizza Hut in Lake Worth, where they stayed until about 10:30 or 11:00 p.m. They started to Pamela Sue's home, driving in an easterly direction on Malaga Drive which was described by Paula Jo as a "pretty narrow little winding country road". She testified that immediately before the fatal accident occurred she was driving between thirty miles per hour and forty miles per hour, although she admitted she could have been driving faster. She said she didn't think she was doing any more than forty five miles per hour.

Although Malaga Drive is a curvy, winding road, according to Paula Jo's testimony, there were no sharp curves on it, and she testified that before the accident she had manipulated about four gradual curves. This asphalt topped road was dry at the time of the fatal accident. Just before the accident, Paula Jo entered a long, gradual curve, and she testified that as she came around the curve to the right she attempted to turn the steering wheel of her car back to the left, but was unable to do so. The curve to the right she was in right before the accident was, according to her testimony, probably a little more than a quarter of a mile in length.

Before she had trouble with the steering wheel on this curve she hadn't experienced any difficulty with it, although she said "it squeaked" several times that night. The steering mechanism on the car was not checked after the one car collision.

Paula Jo's testimony about the steering wheel locking or freezing on her was, to say the least, vague and confusing. She said that after she started to turn as she entered that last curve she didn't remember whether she made a small turn and returned the steering wheel to center or whether she turned it one time and held it all the way around the curve. She did testify, however, that she did not realize that it was "locked or frozen" until the end of the curve, and that she was going straight at the time she left the road. She didn't know how long she had the steering wheel in that turned position, to the right while taking the curve, and she didn't know how long it had been turned that way before she realized it was "locked or frozen". She did say, however, that she was almost at the end of the curve before she realized the wheel was locked.

She then went off the road and the vehicle cleared or went over a sloping bar ditch, or slight depression, beside the road, and landed on a grassy area, on it's top, some 144 feet from the point where it left the road. James Simmons, father of the deceased girl, testified that he stepped off the skid marks and they were approximately 150 feet in length. D.P. Conner, the investigating officer, testified that the skid marks were approximately 144 feet 10 inches in length. Conner also testified that in his opinion the car turned over two or three times before it hit a bush and came to rest on the bush. Paula Jo testified the car turned over only once.

Paula Jo also testified that after her car left the road she attempted to apply her brakes, but hit the accelerator pedal instead of the brake pedal. It was the increased speed caused by her stepping on the accelerator that "jumped" the vehicle over the bar ditch, or slight depression, as it was variously described in the record.

When it left the road, the car, according to Paula Jo, was going straight, but turned sideways when she finally hit the brake. She never applied the brake until she was well off the road and had almost hit the bush, where the car stopped. She testified that she could have gone one hundred feet or so between the time she hit the accelerator pedal and the time she finally got on the brake.

James Simmons, father of Pamela Sue, described the condition of the tire marks, or skid marks in this fashion:

Well, they were well outlined, the grass was scraped out of each one of them. They were an inch deep to two or three inches deep along the line, but they were completely void of grass where each tire went. Looked like you had taken a shovel and just scooped the grass out and threw it aside.

Paula Jo Jackson, who was sixteen years old at the time of the accident had been driving an automobile only three or four months, testified that at the time she left the road her foot was on the accelerator. She did not apply her brakes until she was well off the road and until she had almost hit the bush, which turned the car over. She did not know how fast she was going when she applied her brakes, slid sideways, or when she hit the bush. Also, she did not know how far it was from the point where she applied her brakes until she hit the bush.

The car was practically demolished, with the primary damage done to the top part of the car. Pamela Sue Simmons was found dead underneath the overturned car.

■ The test for determining a point of error alleging that the verdict of the jury is so against the great weight and preponderance of the evidence is set forth in, *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951) and in former Chief Justice Calvert's excellent and often cited article "No Evidence" and "Insufficient Evidence", Points of Error in 38 Texas L.Rev. 361. With regard to a determination of this point of error, Judge Calvert in his article said:

If there is evidence of probative force tending to prove the existence of a vital fact and evidence tending to disprove its existence and the point of error is that the finding is against the great weight and preponderance of the evidence, the rule by which a Court of Civil Appeals should be guided in passing on the point is simple even if the conclusion to be reached in a particular case is difficult. If the finding of the existence of the fact, considering all of the evidence, is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust, the court should sustain the point and order a new trial; otherwise, the court should overrule the point and affirm.

■ In applying this test, then, to the facts of this particular case, we have concluded, after a complete and thorough review of all of the evidence, that the finding of the jury of no negligence on the part of appellee is so against the great weight and preponderance of the evidence as to be clearly and manifestly wrong and unjust. We have reviewed the evidence in this case in considerable detail, although we of course have not stated herein all of the evidence. We think that such evidence clearly shows that this accident which occurred on a dry, asphalt topped road, in the middle of a long, gradual curve, could not have happened without some negligence on the part of the driver of the car.

Appellee argues that her testimony states that her steering wheel locked when she was in the curve is sufficient to support the jury's findings of no negligence. We disagree. Even if we accept this testimony, as we must, although it was very vague, confusing and speculative, we are confronted with the undisputed facts that after her steering wheel supposedly locked, her car left the roadway, "jumped" or skipped over a bar ditch or slight depression, turned sideways in mid-air, and went a distance of at least 144 feet until it hit a bush, when it turned over at least once and possibly two or three times. We are confronted also with the admission by appellee that she did not attempt to apply her brakes until after she had left the roadway, and then, instead of applying the brake pedal, she hit the accelerator pedal, which obviously increased her speed.

It is our opinion that justness and fairness require a new trial, and, accordingly appellant's first two points of error are sustained.

■ In view of the very recent holding of the Supreme Court of Texas in *Sanchez v. Schindler,* 651 S.W.2d 249 (Tex.1983) holding that in the future and with respect to

all cases now in the appellate process, a surviving parent will be entitled to recover damages for grief, sorrow, loss of love, society, comfort and mental anguish, as well as pecuniary loss, it is ordered that on retrial of this case, all of the above elements, referred to in *Sanchez,* will be considered.

Judgment reversed and remanded.