Pauline BRADLEY, Appellant,

v.

QUALITY SERVICE TANK LINES and Terry Lynn Sivley, Appellee.

No. 2–82–211–CV.

Court of Appeals of Texas, Fort Worth.

June 29, 1983.

Rehearing Denied Aug. 3, 1983.

Donald L. Johnston, Sherman, for appellant.

Robert G. Vial, Dallas, for appellee.

Before FENDER, C.J., and ASHWORTH and SPURLOCK, JJ.

OPINION

SPURLOCK, Justice.

Appellant, Pauline Bradley, appeals the granting of a motion for summary judgment in favor of appellees, Quality Service Tank Lines, and Terry L. Sivley, alleging that the summary judgment proof establishes as a matter of law that there were

genuine issues of fact concerning Bradley's damages.

We affirm.

On October 5, 1981, 25 year old Rebecca Bradley Schaflander was killed in a motor vehicle accident involving the automobile which she was driving and a truck owned by Quality Service Tank Lines and driven by appellee, Terry L. Sivley. On December 1, 1981, Lew Schaflander, the surviving husband of the deceased, filed a wrongful death action against appellees. Bradley was not a party to the suit at that time, nor was the suit filed in Bradley's behalf as a beneficiary under the Texas Wrongful Death Act. On June 21, 1982, appellees filed a Motion to Compel Completion of Settlement seeking to have the trial court compel Bradley to execute settlement papers and a draft for payment in the amount of $250,000.00. On June 28, 1982, the court found that Bradley was an indispensible party to the lawsuit and issued an order making her a party to the suit. On June 30, 1982, the court issued an order for Bradley to show cause why she should not be joined as a party plaintiff and to show cause why she should not be compelled to settle the case. On July 19, 1982, Bradley filed a Motion to Quash the show cause order and her answer to the motion to compel settlement. That day, the court denied Bradley's Motion to Quash, made her a party plaintiff to the lawsuit, and denied appellees' Motion to Compel Settlement. On July 23, 1982, appellees filed their Motion for Summary Judgment alleging that as a matter of law that Bradley had not sustained any damages arising from the death of Rebecca Bradley Schaflander. On August 9, 1982, Bradley filed her response to appellees' request for admissions, admitting that she had never received financial support from the deceased, but stating that Bradley had an expectation that during her retirement her daughter would support her.

On August 12, 1982, Bradley filed her response to appellees' Motion for Summary Judgment, along with the affidavits of herself, and her son, (brother to the decedent), Joe E. Bradley, Jr., which state that the deceased was to have carried out in the future, upon the retirement of her parents from their retail shoe business, a form of "buy-out", whereby the deceased and her brother would purchase the family business from their parents. Also, both Bradley and her son stated that the deceased had been providing, and was expected to continue to provide, advice and counsel in the operation of the business, as well as in family financial decisions.

On August 19, 1982, which was the date of the hearing upon appellee's Motion for Summary Judgment, Bradley filed her deposition with the court.

On August 24, 1982, the trial court dismissed all claims of co-plaintiff Lew Schaflander upon his motion, because all matters of controversy had been settled as between Lew Schaflander and appellees.

Appellees' Motion for Summary Judgment was granted on September 10, 1982, and the trial court ruled that Bradley had not sustained any damages as a matter of law by the death of her daughter, and dismissed all Bradley's claims against appellees with prejudice.

Bradley filed her original petition on September 29, 1982, praying for affirmative relief under the Texas Wrongful Death Act for the death of her adult daughter, Rebecca Bradley Schaflander. Appellees filed their answer to Bradley's original petition on October 5, 1982. The trial court overruled Bradley's motion for new trial on November 22, 1982.

Bradley contends that the trial court erred in granting appellees' Motion for Summary Judgment. She takes the position that the court impliedly found that, as a matter of law, Bradley had suffered no damages as a result of her adult daughter's death. Bradley maintains that genuine issues of fact relating to her alleged damages were raised by the summary judgment proof. Bradley asserts that the trial court implicitly found that she had suffered no pecuniary loss, that is, nothing in the nature of a benefit which can reasonably be estimated in money.

Operating under the then extant "pecuniary loss rule", we find that the trial court did, in fact, rule that the summary judgment proof did not establish any evidence from which it could be determined that Bradley had suffered actual damages as a result of the death of her adult child. This "pecuniary loss rule" had held that a surviving parent is entitled to recover as actual damages for the death of a child only the pecuniary value of the child's services until (s)he reaches majority, less the cost and expense of the child's care, support, education, and maintenance, and such sums as might be reasonably expected as contributions after said child reached majority. The surviving parent was not allowed to recover for mental anguish, grief, bereavement, or loss of companionship. *Bedgood v. Madalin,* 600 S.W.2d 773 (Tex.1980). We have reviewed the summary judgment evidence and find that the trial court was correct in so ruling. The deceased was an adult, living apart from her parents, and admittedly had not made any financial contribution to Bradley. The evidence does not establish any question of fact relating to the possibility that Bradley had a reasonable expectation of receiving future financial support from the deceased. The "buy-out" previously referred to, attested to in the affidavits of Bradley and her son, evidencing an intention, at some unspecified future time, on the part of Joe E. Bradley, Jr. and Rebecca Bradley Schaflander, to buy a part of the family business from their parents, in order to provide a source of funds to be used for their parents' later years, does not rise to the level of proof of a reasonable expectation of a contribution to Bradley. The decedent's services to and participation in her parent's retail shoe business were supported by consideration up until the time of her death. Her employment services were also supported by consideration. Even if it could be said that the proposed "buy-out" scheme in which the decedent was to have participated with her brother at some future date rises to the level of an eventuality which might be "reasonably expected", the summary judgment evidence does not show that this transaction would constitute a contribution, as this too was to have been supported by consideration. There was nothing in the summary judgment proof which could serve to establish the basis for the recovery of actual damages under the wrongful death act.

We make this finding in the realization that, since the date of the granting of appellees' motion for summary judgment, the Texas Supreme Court has issued its opinion in *Sanchez v. Schindler,* 651 S.W.2d 249 (1983), broadening the "pecuniary loss rule" to include recovery for "damages for loss of companionship and society and damages for mental anguish for the death of his or her child (footnote omitted)" (at 251). In the *Sanchez* case, Mrs. Sanchez proved that she was suffering from traumatic depressive neurosis. She presented testimony that she was despondent and disoriented, has been forced to seek mental attention for her neurosis and has frequent neck and shoulder pains and headaches. (at 258). Chief Justice Pope, in his dissenting opinion in *Sanchez,* stated that: "In this case, Mrs. Sanchez has satisfied the threshold for recovering mental anguish damages by proving a resulting physical injury. In future cases, we should continue to adhere to the universally established standard for mental anguish damages." (at 258).

Bradley's supplemental brief argues that Bradley's summary judgment proof includes evidence from which a trier of fact might find mental anguish damages, and that consequently the trial court erred in granting the motion for summary judgment. We must therefore look to the proof offered to establish these damages, that is, Bradley's deposition, referred to above as filed on the date of the hearing upon appellees' motion for summary judgment. The deposition contains the following sworn statements, cited for our review in Bradley's supplemental brief:

Q. Let me ask you this way, then. Have you received any medical treatment for physical problems that you attribute to Rebecca's accident and death?

A. (Mrs. Bradley) Yes. I'm going to a psychiatrist.

Q. Who is that, please, ma'am?

A. Dr. David G. Wells.

Q. Doctor who, please, ma'am?

A. David Wells.

Q. Spell his last name, please?

A. W–E–L–L–S.

Q. Where does he office?

A. Here in Sherman.

Q. Had you had. any psychological or psychiatric treatment prior to October 5, 1981?

A. Yes.

Q. Okay. Who had given you that, please, ma'am?

A. Dr. Wells. Depression, mild depression from being a cancer patient and having to go through tests and that sort of thing.

Q. Were you still under his supervision or care in October of 1981 for depression as a result of that cancer?

A. Yes, because I had just been in the hospital through all the testing.

Q. Who did that testing on your cancer; do you recall?

A. Dr. Johnstone took the growth off my ear.

Q. He's a physician here in Sherman?

A. Yes, uh-huh, in Sherman.

Q. Okay.

A. And Dr. Barkley did the gastrointestinal.

Q. Is Dr. Barkley here also?

A. Yes, they're all here. They may be— they're in Texoma Medical Center, is where they are.

Q. What's Dr. Barkley's first name?

A. You got me.

Q. And did you have this surgery, the cancer surgery, at Texoma Medical Center?

A. No. I had cancer surgery 11 years ago, but I had had some flare-ups intestinal flare-ups, and this little growth that was on my ear.

Q. Was the surgery on your ear done at the Texoma Medical Center?

A. No. Surgery on my ear was done at Rosalyn Jones but the gastrointestinal stuff was done at Texoma.

Q. So the doctors discovered that you had cancer approximately 11 years ago?

A. 11 years ago, I had a radical mastectomy.

Q. And you had done pretty well until you started having some flare-ups in around 1981?

A. Well, they do—if you have intestinal flare-ups, they do the—or, if you have growth of any kind, they just go right ahead and test for cancer cells and that sort of thing.

Q. And Dr. Stone—

A. Johnstone.

Q. —was the gentleman who was doing that for you ever since you moved to Sherman?

A. Dr. Wells was the psychiatric.

Q. Okay. But Dr. Stone was your—

A. Dr. Johnstone. J–O–H–N–S–T–O–N–E.

Q. One word then?

A. Yeah.

Q. That was confusing me.

A. Oh, I'm sorry.

Q. I thought John was his first name and Stone was his last name.

MR. CAIN: No. Dr. Bob Johnstone.

Q. (BY MR. WRIGHT) Okay. Are you still under Dr. Wells supervision?

A. Yes. I am.

Q. Do you have an appointment to go back to see him in the near future?

A. Yes.

Q. How often are you going to see him now?

A. Four to six weeks.

Q. Is he still giving you care and treatment regarding your daughter Rebecca's accident and death?

A. Yes.

Q. And in addition, he's also helping you with—deal with the depression that the cancer has given you?

A. Well, and the mild depression of my husband's death.

Q. Have you seen any other psychiatrists, psychologists, doctors, chiropractors, osteopaths, any medical personnel,

for physical or mental problems that you attribute to Rebecca's accident and ultimate death?

A. No.

■ We find that this summary judgment evidence does not constitute evidence from which a trier of fact might find that Mrs. Bradley had proven a resulting physical injury, so that she might recover mental anguish damages. *See Sanchez, supra.* Therefore, the trial court did not err in granting appellees' motion for summary judgment.

The judgment of the court is affirmed.